interviews, including Ms. Griffin, and also Ms. Bruneau, the candidate eventually chosen for the job. Mr. Sims, who interviewed the candidates, reported that he considered five factors in assessing the candidates: (1) experience with full time support manpower analysis, requirements and authorizations; (2) experience working with the command plan; (3) human resources background; (4) resource management; and (5) changes to management and the transformation of the Army Reserve. Mr. Sims ranked Ms. Griffin similarly to Ms. Bruneau; in fact, Ms. Griffin was apparently Mr. Sims's second choice overall of the candidates who interviewed. (Tr. of OCI Fact Finding Conference Dated June 21, 2005 ("June OCI Tr.") 37.) However, he ranked Ms. Bruneau higher than Ms. Griffin on the final factor, and Ms. Bruneau was eventually selected for the position.[5] Ms. Griffin filed a formal EEO complaint concerning the decision not to hire her for the Operations Officer position on February 1, 2005.

[5]Ms. Griffin contends that Mr. Williamson was responsible for the selection of Ms. Bruneau for the Operation Officer position, based on official records denoting Mr. Williamson as the decisionmaker. Secretary Harvey responds by stating that it was Mr. Sims, not Mr. Williamson, who actually made the hiring decision. For purposes of this Summary Judgment Motion filed by Secretary Harvey, the court will assume that Mr. Williamson was the ultimate decisionmaker, though that does not undermine the essentially undisputed facts that Mr. Sims conducted the interviews and rated Ms. Bruneau higher than Ms. Griffin. (Though Ms. Griffin claims to dispute these facts, they are only disputed as not being an accurate description of the cited evidence. Having viewed the cited evidence, however, the court does not agree.)

On February 4, 2005, Ms. Griffin filed the instant action, alleging that: (1) she suffered gender discrimination pursuant to Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e-2 ("Title VII"), when her position was not reclassified as a GS-14; (2) she is entitled to relief under the Equal Pay Act ("EPA") for not receiving equal compensation for substantially similar work to a male counterpart, Mr. Veal; (3) she was discriminated against on the basis of age pursuant to the Age Discrimination in Employment Act ("ADEA") when her position was not reclassified, and when the department refused to promote her to other GS-14 positions; and (4) she suffered from illegal employment retaliation in violation of Title VII, when the defendant refused to reclassify her position and did not select her for other GS-14 positions.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is proper under Fed. R. Civ. P. 56 "if . . . there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at

255. However, the non-movant must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252. Accordingly, the non-movant may not avoid summary judgment with evidence that is "merely colorable or is not significantly probative." Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1196 (11th Cir. 1997). Rather, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of [the opposing party's] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

**B. Count One: Title VII Gender Discrimination**

In her Amended Complaint, Ms. Griffin alleged Title VII gender discrimination based on the Secretary's failure to reclassify her position to GS-14 status in February 2002. A federal sector employee such as Ms. Griffin may not bring a civil action alleging a claim under Title VII in federal court without first exhausting her administrative remedies. See 42 U.S.C. § 2000e-16(c); West v. Gibson, 527 U.S. 212, 218-19 (1999). "Section 717 of Title VII, 42 U.S.C. § 2000e-16, is the 'exclusive

pre-emptive administrative and judicial remedy for the redress of federal employment discrimination.'" Grier v. Secretary of Army, 799 F.2d 721, 724 n.2 (11th Cir. 1986) (quoting Brown v. Gen. Servs. Admin., 425 U.S. 820, 829 (1976)). Specifically at issue here is the requirement that a federal employee "must initiate contact with an [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory, or, in the case of personnel action, within 45 days of the effective action." 29 C.F.R. § 1614.105(a)(1).[6] This is so because "the proper focus for when a statute of limitations begins to run is the time of the discriminatory act." Jones v. Dillard's, Inc., 331 F.3d 1259, 1266 (11th Cir. 2003).

Though ordinarily a plaintiff must contact an EEO counselor within 45 days of the "effective" personnel action, the Eleventh Circuit has noted that there is no requirement that a complainant begin the administrative process "until the facts which would support a cause of action are apparent or should be apparent to a person with reasonably prudent regard for [her] rights." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1531 (11th Cir. 1992). Additionally, an employee's

[6]However, the agency "shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that . . . he or she did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred." 29 C.F.R. § 1614.105(a)(2); Robinson v. Jojanns, 147 Fed. Appx. 922, 924 n.2 (11th Cir. 2005). In this case, the agency accepted the EEO complaint as timely, based on an erroneous interpretation of the significance of Ms. Griffin's December 6, 2002 notice of the CPAC's decision, see infra note 8, and thus there was no occasion for the EEO to extend the deadline.

"mere suspicion" of discrimination, without personal knowledge that she was treated differently than a member of the opposite sex, is not sufficient to alert her that she should file an EEO claim. See Jones, 331 F.3d at 1267-68 (age discrimination context). However, there is no requirement that a plaintiff know all facts necessary to support a claim in order to file a complaint.[7] Id. at 1266.

Therefore, the question before the court is when Ms. Griffin knew or should have known the facts that support her cause of action for Title VII gender discrimination. To support such a cause of action, a plaintiff must show that (1) she is a member of the protected class, (2) she was subjected to an adverse employment action, (3) her employer treated similarly-situated employees not members of her protected class more favorably, and (4) she was qualified for the job at issue. See Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir.1997).

Secretary Harvey in contrast, argues that "Ms. Griffin had full knowledge in February of 2002 of all of the facts on which she now relies to challenge Mr. Williamson's disapproval decision." (See Def.'s Reply in Supp. of Summ. J. Mot. 6-7.) Ms. Griffin does not appear to dispute that February would ordinarily be the relevant date by which to determine whether she contacted an EEO Counselor in a timely

[7]For example, in an age discrimination case, the Eleventh Circuit held that "'[a] plaintiff, who is aware that he is being replaced in a position, which he believes he is able to perform, by a person outside the protected age group, knows enough to support filing a claim.'" Jones, 331 F.3d at 1266 (internal quotations and citation omitted).

manner,[8] but argues that in this situation, she was not required to contact a Counselor until all the facts which support a cause of action were apparent to her. See Miranda, 975 F.2d at 1532. She states that those facts were not apparent to her until December of 2002, when she learned of CPAC's advisory classification.

It is undisputed that as of February 2002, Ms. Griffin knew most of the facts that would support a cause of action -- namely, that she is a member of the protected class, she was subjected to adverse employment action when her position was not reclassified, and that she was qualified for the position at issue. However, it is not entirely clear from the facts when she first realized that she was being treated differently than Mr. Veal. Therefore, the court finds that the facts, when viewed in the light most favorable to Ms. Griffin, show that the latest date upon which she knew all facts on which she now relies was not when she learned of CPAC's advisory decision on December 6, 2002,[9] but was rather the date in May 2002 when she

[8]Although the EEO Office accepted Ms. Griffin's initial complaint for investigation when she alleged that, "on December 6, 2002, she became aware that her request to have her position upgraded was denied" (Def.'s SOF ¶ 105), that was merely the date she learned that CPAC had also classified her position as GS-13. The date Ms. Griffin actually became aware that her position upgrade was denied was in February 2002, when she found out about Mr. Williamson's reclassification disapproval.

[9]Nor can December 6, 2002, be considered the date of the"adverse employment action," for it was not an"effective action" as it was merely an advisory classification and had no bearing on her employment status or pay. Rather, the only "effective action" was Mr. Williamson's disapproval, in October 2001, of the reclassification request. Ms. Griffin nevertheless contends that '[t]he Army, through subsequent inaction on Ms. Griffin's attempts to get her job properly classified, effectively adopted that 'courtesy' CPAC

confronted Mr. Williamson about the alleged misclassification of her job and voiced concerns that the differences were gender-motivated.[10]

Therefore, the court, for purposes of this Motion for Summary Judgment, will assume that May 2002 was the date by which all facts that would support a cause of action were known to Ms. Griffin. However, Ms. Griffin did not contact an EEO counselor until at least January 3, 2003, well outside the 45-day limit provided by the federal regulations. Ms. Griffin does not dispute this fact, but rather argues that, based on application of equitable tolling principles, the time frame for her to seek

---

review as its adverse employment decision . . . ." (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 21-22.) However, "[a]n employer's refusal to undo a prior discriminatory act is not, in itself, a new act of discrimination." Stewart v. Booker T. Washington Ins., 232 F.3d 844, 853 (11th Cir. 2000) (finding that a company's refusal to rectify a past discriminatory transfer was not a continuing violation). Therefore, the allegedly discriminatory "adverse employment action" thus occurred in October 2001, and the limitation period for contacting the EEO did not then reset when Ms. Griffin found out about a subsequent appraisal of that decision.

[10]As set forth above, when Ms. Griffin confronted Mr. Williamson with her concerns regarding his disapproval of her position reclassification, she pointed out that Mr. Veal is in the same division, worked for the same Colonel, yet was classified a schedule level above her, at GS-14. When Mr. Williamson allegedly replied, "well, I let that one slip by," Ms. Griffin countered by saying,"well, you know, he's a male and I'm a female." (Sept. OCI Tr. 20:18.) This indicates to the court that she not only knew that she had been treated differently than Mr. Veal, but also that the facts which support her cause of action had become apparent to her by this date. As further support, when an OCI investigator asked Ms. Griffin if she felt that "management was fully aware that you considered it a discriminatory action at that point in time?", Ms. Griffin responded "Right." (Id. 21:22-24.) Thus, by May of 2002, Ms. Griffin knew that she was being treated differently than a similarly situated member of the opposite sex, and the court finds no merit in her assertion that she didn't know all facts to support her cause of action until her learning of the "courtesy review" on December 6, 2002.

EEO counseling should be equitably modified to begin on December 6, 2002, the date she learned "that USARC had commissioned a facially deficient 'courtesy review' of her position." (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 16-17.) Ms. Griffin thus argues her January EEO contact was timely because (1) equitable tolling should apply to her claims since she had only a mere suspicion of gender discrimination until she learned of CPAC's purported "courtesy review" on December 6, 2002; and (2) her claim is subject to the continuing violations doctrine. The court will address each argument in turn.

**1. Equitable Tolling**

This Circuit has held that "[t]he prerequisite of timely contact with an EEO counselor is not jurisdictional, and is subject to . . . equitable tolling." Robinson, 147 Fed. Appx. at 924. The Robinson court held that "[e]quitable tolling applies when the defendant misleads plaintiff into allowing the statutory period to lapse [or] when plaintiff has no reasonable way of discovering the wrong perpetrated against him . . . ." Id. (internal quotations and citations omitted). The Eleventh Circuit has cautioned, however, that "[a]lthough a court may equitably toll a limitations period, the plaintiffs must establish that tolling is warranted. Equitable tolling is inappropriate when a plaintiff did not file an action promptly or failed to act with due diligence . . . [as it] is an extraordinary remedy which should be extended only

sparingly." Bost v. Fed. Express Corp., 372 F.3d 1233, 1242 (11th Cir. 2004) (internal quotations and citations omitted).

As noted above, Ms. Griffin found out that Mr. Williamson had denied her reclassification in February of 2002, but the court will assume that she knew all facts related to bringing a cause of action for discrimination in May 2002, when she brought her concerns to Mr. Williamson. Regarding those concerns about her job -- and specifically that her disparate treatment may have been gender motivated -- Mr. Williamson allegedly told Ms. Griffin that "[she] shouldn't be the one to have to resolve this issue" and to not do anything until he talked to her directorate and direct supervisor, Mr. Vilcoq. (Pl.'s SOF ¶ 63.) Ms. Griffin now alleges that this "delay in seeking counseling was in reliance on the assurances she was getting that the action was being processed and Williamson's comforting May, 2002 words," as she was apparently led to believe that the unfair treatment "would be rectified." (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 17.) The question is whether this statement may serve as a basis for equitably tolling the time period within which to file a complaint with the EEO.

For equitable tolling to apply here, Ms. Griffin must allege that the Secretary mislead her into allowing the statutory period to lapse. See Robinson, 147 Fed. Appx. at 924. Ms. Griffin alleges that this May 2002 conversation was a proper basis for

equitable tolling, since she felt that her situation would be rectified until she learned in December 2002 of the "facially-deficient" CPAC review, and cites three cases to that effect. See Reeb v. Econ. Opportunity Atlanta, Inc., 516 F.2d 924 (5th Cir. 1975)[11]; Miranda, 975 F.2d 1518; Jones, 331 F.3d 1259.

However, each of these cases is distinguishable from the present facts. In both Jones and Reeb, the employees were told they were being replaced for non-discriminatory reasons. See Jones, 331 F.3d at 1267-68 (told her position was being eliminated), Reeb, 516 F.2d at 930 (told there were insufficient funds to keep her). Only later did those employees find out that they were replaced by allegedly less qualified employees, and the court felt that the EEOC-filing deadline should be modified to the date when they discovered these facts. Though the instant case does not involve a termination, Ms. Griffin knew that her position was classified at a lower pay scale than a similarly-situated man as of May 2002 at the latest, when she voiced those concerns about the gender pay discrepancy to Mr. Williamson. Therefore, all of the facts upon which she brings the current claim were known to her as of May 2002 at the latest.

---

[11] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Similarly, in Miranda, 975 F.2d 1518, the Eleventh Circuit also considered equitable tolling in relation to a gender-based wage discrimination claim under Title VII. The Miranda court equitably tolled the plaintiff's claims in a situation where the plaintiff (1) had made several requests for her salary to be raised, (2) her supervisors had given her related assurances that the situation would be rectified, (3) she was never told that her pay disparity would go uncorrected, and (4) she continued to anticipate an increase in pay based upon a written evaluation she had received, as well as extra responsibilities assigned to her. Id. at 1532 ("In this case, as in Reeb, tolling is appropriate because the trial court found that the plaintiff was led by the defendant to believe that the unfair treatment *would be rectified.*") (emphasis added). In contrast, during their May 2002 meeting, it is undisputed that Mr. Williamson reiterated the he had not changed his view that Ms. Griffin's position was appropriately classified at GS-13. Although he allegedly told Ms. Griffin not to do anything until he talked to Mr. Vilcoq and her directorate, there is no allegation that he promised Ms. Griffin that he would rectify the situation or reclassify her position.[12]

---

[12]Plaintiff repeatedly alleges that Mr. Williamson did not have decisionmaking authority over the reclassification decision and that actually this was up to Mr. Vilcoq's discretion. However, Mr. Vilcoq submitted a reclassification request to Mr. Williamson, and since that request required approval, clearly he was not able to make that determination alone. Plaintiff admits that Mr. Williamson disapproved of the upgrade and that her position subsequently remained classified as GS-13. Even if it were the case that Mr. Vilcoq were responsible for reclassification, Ms. Griffin has presented no evidence indicating that Mr. Vilcoq promised to change her classification after the rejection of her

Thus, in contrast to Miranda, while Ms. Griffin did make several requests that her salary be raised, she was never given any assurances or promises that her situation would be resolved in her favor. In addition, although Ms. Griffin took other actions indicating her displeasure with the situation, including filing a rebuttal memo regarding that disapproval with her superior, Colonel Blakeney, on February 21st, as well as initiating an IG action, neither Colonel Blakeney nor the IG promised to reclassify her position, nor did either indicate that they had the power to make such classifications.

Furthermore, it is undisputed that Ms. Griffin did not file a grievance until January of 2003, eight months after her conversation in which Mr. Williamson asked her to wait, and nearly a year after she first found out that her position would not be reclassified. The court finds that even if Mr. Williamson told her not to take action, that did not excuse her failure to contact the EEO until January of 2003. This is particularly true since she clearly did not passively comply with Mr. Williamson's request, but rather initiated an IG Action Request in September 2002, in which she stated that she felt she was "a victim of circumstances and discrimination because the personnel action was not processed appropriately nor timely. . . . The Director .

initial application. In the alternative, Plaintiff alleges that Colonel Lee had the authority to structure Branches within the Force Programs Directorate. However, she once again provides no evidence that Colonel Lee made any assurances to her that her position would be reclassified.

. . can not compensate me for equal work with equal pay, this is unfair labor practice." (Ex. 5 to Griffin Dep.) Although Ms. Griffin contends that this action report was merely expressing "her frustration with the G-1's failure [to her knowledge] to act on Colonel Blakeney and Mr. Vilcoq's attempt to get her job reclassified," (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 16), the court finds that this letter is clearly an affirmative attempt at resolving her employer's failure to properly reclassify her position, and inconsistent with the argument that she relied on Mr. Williamson's or anyone else's promises that they would resolve the alleged misclassification.

Moreover, her attempt to rectify the situation through the IG Action Request does not replace the filing of a charge with the EEO or toll the applicable time limit, since the Supreme Court has held in another Title VII action that "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." Del. State Coll. v. Ricks, 449 U.S. 250, 261 (1980) (citation omitted); see also Robinson, 147 Fed. Appx. at 924 (rejecting the notion that plaintiff-appellant's filing of a grievance with union tolled the limitations period).

For similar reasons, the court rejects the notion that Ms. Griffin's reliance on Colonel Blakeney's assertions tolled the limitations period. Even assuming she relied

on his assertions that her position should be reclassified, she knew that he did not have the power to reclassify her. In addition, she did not in fact so rely, as she filed her September IG Action after he reportedly made those alleged assertions.

In sum, Ms. Griffin's failure to contact an EEO counselor until January of the following year suggests a lack of due diligence, which will not support an equitable modification of the time limit. Ms. Griffin was not mislead into believing that the situation would be rectified by the person who actually had decisionmaking authority over whether to reclassify her position, Mr. Williamson. The undisputed facts are that she waited nearly a year after finding out that her position would not be reclassified to contact the EEO, a delay that finds no justification in Ms. Griffin's cited precedent. Because Plaintiff has failed to establish that she had a reasonable basis to believe that her position would be reclassified, and equitable tolling is to be applied sparingly, the court finds Plaintiff's equitable tolling argument unavailing.

**2. Continuing Violation**

Ms. Griffin argues, in the alternative, that Mr. Williamson's decision was part of a "continuing violation " and therefore timely pled. The Eleventh Circuit has stated: "'In determining whether a discriminatory employment practice constitutes a continuing violation, this Circuit distinguishes between the present consequence of a one time violation, which does not extend the limitations period, and the

continuation of that violation into the present, which does.'" Stuart v. Jefferson County Dep't of Human Res., 152 Fed. Appx. 798, 800-01 (11th Cir. 2005) (quoting Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 448 (11th Cir. 1993)). However, the Stuart court noted that "[a]n employer's failure to promote is a discrete act or single occurrence and therefore the continuing violation doctrine does not apply." Id. (citing AMTRAK v. Morgan, 536 U.S. 101, 114 (2002)).

Ms. Griffin alleges that the Eleventh Circuit's decision in the "somewhat analogous" Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169, 1180 (11th Cir. 2005), cert. granted 126 S. Ct. 2965 (June 26, 2006), precludes any summary judgment on these facts. In that case, the court held that each discriminatory paycheck reflecting a difference in pay between the plaintiff employee and male employees holding the same job constituted a discrete disciminatory act. Id. at 1180. However, those facts are distinguishable. Ms. Griffin did not allege that the receipt of her last paycheck was the date upon which the EEO time limit should begin to run; in fact, Ms. Griffin failed to specify in her Amended Complaint when she received her last paycheck at all, making it impossible for the court to make such a determination as to the timeliness of her EEO contact.

Moreover, Ms. Griffin does not appear to assert in Count I of the Amended Complaint that she is being paid less for similar work (in contrast to her EPA claim

in Count I, discussed infra part II.C); rather, she alleges that Defendant's failure to properly classify her position at the GS-14 level constitutes discrimination in the terms and conditions of her employment, based on gender, in violation of Title VII. See Douglas v. Norton, 167 Fed. Appx. 698, 711 n.17 (10th Cir. 2006) (citing cases that have, in light of the Supreme Court's decision in Morgan regarding discrete acts, "drawn a distinction between pay discrimination claims, where each paycheck received is itself discriminatory, and claims involving discrete acts of discrimination which merely affect the employee's pay"). Although Ms. Griffin here seeks backpay damages for the differential in pay between the GS-13 and GS-14 salary levels, she does not specifically challenge the pay disparity in Count I of the Amended Complaint. As the Douglas court found, this is not a proper pay disparity allegation, nor does it make the continuing violation doctrine applicable: "Douglas has not contended that the GS pay system is discriminatory. His claim is that the denial of his request for re-classification was discriminatory. This denial is a discrete act of discrimination. That this denial may presently affect his pay does not render the continuing violation theory applicable." Douglas, 167 Fed. Appx. at 711 n.17.

In this case, Plaintiff seems to acknowledge that the last affirmative decision directly affecting her pay was Mr. Williamson's October 16, 2001 reclassification

disapproval,[13] not several continuing violations. Although this past discrete act has continuing consequences -- such as the fact that her position remains classified as GS-13 and her pay remains lower -- present consequences of past employment actions are not "continuing violations," and thus this court will not equitably modify the statutory timeliness requirement.

In sum, because Plaintiff's consultation with an EEO counselor was untimely, and is not subject to equitable tolling, the court GRANTS Defendant's Motion for Summary Judgment as it pertains to sex discrimination claims under Title VII.

**C. Count Two: Violation of the Equal Pay Act[14]**

The EPA, 29 U.S.C. § 206(d), prohibits gender-based wage discrimination. Ms. Griffin alleges violations of the EPA based on the fact that her position as Branch

[13]Ms. Griffin's argument is somewhat unclear. She states that "[h]ere, the last affirmative decision directly affecting Plaintiff's pay immediately preceding the start of the short limitations period was Williamson's October 16, 2001 'disapproval,' if not her learning, within the limitations period, of the Army's implicit adoption of the transparently deficient 'courtesy review' by the CPAC." (See Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 17.) If Ms. Griffin is arguing that her awareness of CPAC's agreement with her classification as GS-13 is the last affirmative action to affect her pay, this argument has no merit. Even if Mr. Williamson's disapproval of the reclassification request was a discriminatory act, "[a]n employer's refusal to undo a prior discriminatory act is not, in itself, a new act of discrimination." See Stewart, 232 F.3d at 853 (finding that a company's refusal to rectify a past discriminatory transfer was not a continuing violation). Thus, the fact that Ms. Griffin discovered CPAC's advisory classification had no bearing on her pay or job classification.

[14]See infra section III for a discussion of this court's subject matter jurisdiction over Ms. Griffin's claims to the extent that they exceed $10,000.

Chief is "substantially similar" to that of a male employee, Mr. Veal, and she does not receive equal pay. (Am. Compl. ¶ 37.) Defendant, on the other hand, argues that Ms. Griffin is not entitled to recover under the EPA because Mr. Veal's and Ms. Griffin's jobs are not equal; specifically, Defendant argues that (1) the job contents are not equal; and (2) Mr. Veal's position was more complex and required different expertise.

In order to establish a prima facie case under the EPA, a complainant "must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)). Plaintiffs face a "fairly strict standard" in demonstrating substantially similar work for less pay. Miranda, 975 F.2d at 1526. However, the two jobs compared "need not be identical," but rather only "substantially equal." Id. at 1533 (citations omitted). This is so because "[t]he controlling factor under the Equal Pay Act is job content -- the actual duties the respective employees are called upon to perform." Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989) (internal quotations and citation omitted).

Although the parties do not dispute that both Mr. Veal and Ms. Griffin have the same job title of "Branch Chief," the job title and description are not controlling, but rather the jobs themselves. See Parker v Burnley, 693 F. Supp. 1138, 1149 (N.D. Ga. 1988) (Hall, J.). Secretary Harvey, citing Waters, argues that because Ms. Griffin cannot show that the "actual content of her job and the comparator's job [are] the same," Ms. Griffin's claim fails and "[t]his is the end of the analysis." (Def.'s Reply in Supp. of Summ. J. Mot. 25.) However, Ms. Griffin need not show that the content is "the same," but rather that it is "substantially similar" -- that is, whether the jobs require "equal skill, effort, and responsibility, [and] are performed under similar working conditions." 29 U.S.C. § 206(d)(1). "Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." Pearce v. Wichita County, City of Wichita Falls, Tex., Hosp. Bd., 590 F.2d 128, 133 (5th Cir. 1979). For example, in Miranda, the Eleventh Circuit reversed summary judgment and recognized a genuine issue of material fact in relation to an EPA claim of a woman who was a "buyer" at a grocery store, even though she ordered different products than the other buyers, was in charge of products that required less turnover, and was responsible for less inventory. Miranda, 975 F.2d at 1524.

Ms. Griffin contends that a genuine issue of material fact remains as to whether her position and Mr. Veal's position constituted equal work in terms of requiring equal skill, effort, and responsibility performed under similar working conditions. Defendant claims that Ms. Griffin's and Mr. Veal's jobs have "different functions, missions, duties, and responsibilities." (Def.'s Reply in Supp. of Summ. J. Mot. 16.) Ms. Griffin and Mr. Veal undoubtably supervised different employees and different departments but that does not necessarily mean that their jobs were not equal in skill, effort, and responsibility. Miranda, 975 F.2d at 1533 ("The prima facie case . . . focuses solely on the primary duties of each job."). In this case, several factors indicate that Ms. Griffin's primary duties may have been comparable to Mr. Veal's: for example, both Mr. Veal and Ms. Griffin reported to the same overseeing officer, both oversaw a department and other employees, and their positions appear on the same tier of importance in internal Army documents.[15] The parties certainly agree as to the relative complexity of the two employees' jobs. Ms. Griffin asserts that she supervised more and higher-grade employees than Mr. Veal; Defendant counters that Mr. Veal supervised a "wider range of functions" that were more complicated and required shorter turnaround than Ms. Griffin's work. (Def.'s Mot. for Summ. J. and

[15]In fact, these charts indicate that Mr. Veal's position is, from a structural point of view, the most similar position to Ms. Griffin's in the entire division as the only other subdivision of the Force Programs Integration Division.

Br. in Supp. 24.) Since there is a genuine issue of material fact regarding whether the skills, duties and responsibilities of Ms. Griffin and Mr. Veal were substantially similar, Defendant's Motion for Summary Judgment is DENIED as to the EPA claims.

**D. Count Three: Violation of the Age Discrimination in Employment Act**

The ADEA, 29 U.S.C. § 621 et seq., prohibits age discrimination in both private and public employment. See 29 U.S.C. §§ 631, 633a. Regarding federal employment, it specifies that federal employees and applicants for employment who are at least 40 years of age (including those in "military departments") "shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). A plaintiff attempting to prove an ADEA age discrimination claim may do so using either direct or circumstantial evidence. See Damon v. Fleming Supermarkets, Inc., 196 F.3d 1354, 1358 (11th Cir. 1999). Consistent with Eleventh Circuit precedent, when a plaintiff's ADEA claim is based on circumstantial evidence of discrimination, as in this case, the court relies on the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), for its analysis. See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000); Damon, 196 F.3d at 1359. Under this framework, the plaintiff must first establish a prima facie case of discrimination. See Chapman, 229 F.3d at 1024. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." Texas Dep't of Cmty.

Affairs v. Burdine, 450 U.S. 248, 254 (1981). Once a prima facie case is established, the defendant employer must proffer legitimate, nondiscriminatory reasons for its employment decision. See Chapman, 229 F.3d at 1024; Damon, 196 F.3d at 1361. The employer's burden, however, "is merely one of production; it 'need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" Chapman, 229 F.3d at 1024 (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997)). Should the defendant articulate one or more such reasons,

> the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision,'

but rather, mere pretext. Chapman, 229 F.3d at 1024 (quoting Combs, 106 F.3d at 1528). "This demonstration merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against the plaintiff." Holifield, 115 F.3d at 1565 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)). If the plaintiff fails to proffer sufficient evidence, the employer is entitled to summary

judgment on the plaintiff's claim. Chapman, 229 F.3d at 1024-25 (citing Combs, 106 F.3d at 1529).

Ms. Griffin contends that Secretary Harvey discriminated on the basis of age when the Army failed to reclassify her position, and also when Defendant failed to select her for two GS-14 positions that were filled by younger candidates. The court will discuss each of these assertions in turn.

**1. Timeliness**

Before proceeding to the substance of Ms. Griffin's claims, the court must address whether she timely satisfied all administrative requirements before filing the present action. The Supreme Court has noted that for federal employees,

> the ADEA provides two alternative routes for pursuing a claim of age discrimination. An individual may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies. See 29 U. S. C. §§ 633a(b) and (c). A federal employee complaining of age discrimination, however, does not have to seek relief from his employing agency or the EEOC at all. He can decide to present the merits of his claim to a federal court in the first instance. See § 633a(d).[16]

[16] Although Ms. Griffin apparently did not do so here, if a federal employee chooses to file an action in federal district court rather than pursue administrative relief through the EEO, she may do so, "provided that [s]he has filed a Notice of Intent to Sue with the EEOC no later than 180 days from the allegedly discriminatory act and at least 30 days prior to filing the action." Attwell v. Granger, 748 F. Supp. 866, 870-71 (N.D. Ga. 1990) (Camp, J.) (citing, inter alia, 29 U.S.C. §§ 633a(c) and (d)); 29 C.F.R. § 1614.201(a) ("As an alternative to filing a complaint under this part, an aggrieved individual may file a civil action in a United States district court under the ADEA against the head of an alleged discriminating agency after giving the Commission not less than 30 days' notice of the

Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991). Ms. Griffin has not alleged that she took advantage of the latter "direct route," and thus the court must examine whether she timely complied with the administrative filing requirements. The federal regulations requiring that an aggrieved person initiate contact with an EEO counselor cover age as well as sex. See 29 C.F.R. § 1614.105(a) ("Aggrieved persons who believe they have been discriminated against on the basis of . . . age . . . must consult a Counselor prior to filing a complaint . . . .").

**2. Reclassification**

As set forth above, the court assumes for purposes of this summary judgment motion that all facts which would support a cause of action were (or should have been) known to Ms. Griffin as of May 2002. Ms. Griffin, however, did not contact an EEO counselor until at least January 3, 2003, well outside the 45-day limit provided by the federal framework. In addition, as shown with the discussion of Title VII gender claims above, neither equitable tolling nor the continuing violations doctrine applies in this case. Accordingly, the court GRANTS summary judgment on all age-related claims pertaining to reclassification of the FTS Branch Chief position.

**3. Selection of Mr. Taylor**

---

intent to file such an action.").

Mr. Taylor was hired and began his job as Resource Integration Officer, a newly created GS-14 position, in January of 2002. Although Ms. Griffin does not appear to assert Mr. Taylor's selection as an independent claim of age discrimination in her Amended Complaint, she does reference his selection several times in the context of revealing the possible ageist preferences of Mr. Williamson. But Defendant points out that Ms. Griffin, inter alia, failed to exhaust her administrative remedies by failing to contact an EEO counselor in a timely manner. Plaintiff appears to concede that she did not timely exhaust her administrative remedies as pertaining to this claim.[17] Accordingly, the court finds that any possible claim Ms. Griffin may assert relating to the selection of Mr. Taylor is barred as untimely.

**4. Selection of Ms. Bruneau**

As noted above, Ms. Griffin applied for the Operations Officer position in 2004, and, after another candidate (Ms. Bruneau) was selected for the position, Ms. Griffin filed a formal EEO complaint concerning that decision on February 1, 2005. Because there is no dispute regarding the exhaustion of Ms. Griffin's administrative remedies

---

[17]Once again, it is not immediately apparent what Ms. Griffin is attempting to convey to the court when she writes the following (without modification):

> Ms. Griffin and Mr. Taylor's relative qualifications for the position as described are further evidence of age [Taylor is or gender discrimination by Mr. Williamson, though her nonselection for this position is not a claim for Ms. Griffin timely exhausted administrative remedies and, therefore, for which she can seek relief in this suit.

(Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 9 n.9.)

regarding this selection, the court will turn to whether Ms. Griffin has met her prima facie showing of age discrimination under the McDonnell Douglas burden-shifting framework. For allegations of age discrimination based on circumstantial evidence, a plaintiff may meet her prima facie burden by showing "(1) that she was a member of the protected group . . . ; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought . . . ; and (4) that she was qualified to do the job for which she was rejected." Damon, 196 F.3d at 1359 (citation omitted).

There is no dispute that Ms. Griffin is a member of the protected group, 29 U.S.C. § 633a(a), and that she suffered an adverse employment action when she was not hired for the Operations Officer Position. Further, the court finds that Ms. Bruneau, at twelve-years younger, was "substantially younger" for purposes of Ms. Griffin's prima facie case. See, e.g., Carter v. Miami, 870 F.2d 578, 583 (11th Cir. 1989) (holding that 49-year-old's replacement by a 46-year-old sufficient to establish prima facie case). Finally, Defendant does not dispute that Ms. Griffin was qualified for the job. Therefore, the court finds that Ms. Griffin has met her prima facie case of showing age discrimination as it relates to Ms. Bruneau's selection.

Defendant argues, however, that the selection of "Ms. Bruneau was not discriminatory or retaliatory." (Def.'s Mot. for Summ. J. and Br. in Supp. 19.)

Defendant has presented a legitimate non-discriminatory reason for selecting Ms. Bruneau over Plaintiff. Specifically, Mr. Sims evaluated the candidates on five factors, and gave Ms. Bruneau and Ms. Griffin similar scores on the first four factors. On the fifth factor ("Changes to management and the transformation of the Army Reserve"), however, Mr. Sims testified that he ranked Ms. Bruneau outstanding and Ms. Griffin satisfactory because he felt Ms. Griffin's responses lacked flexibility and showed reluctance to change the processes in place. (Def.'s SOF ¶¶ 154, 155). In particular, Ms. Griffin's answers indicated to Mr. Sims "that we could not change the way we were currently doing business." (Def.'s SOF ¶ 157.) When asked at her deposition whether she might have indicated to Mr. Sims something that would give him this impression that she felt change was not possible, she replied, "I don't know, but I just gave him the fact that, you know, we can't change the way the federal government operates." (Griffin Dep. 259:9-11.) She also indicated that the "planning/programming/budget/execution system . . . is tied to the entire federal system, and that's one of the things as part of the Department of Defense we cannot change that." (Id. at 259:1-4) In contrast, Ms. Bruneau apparently indicated a willingness to consider changes and the importance of transforming the Army in order to stay relevant. Accordingly, the court finds that Secretary Harvey has

properly alleged a legitimate, non-discriminatory reason for choosing Ms. Bruneau over Ms. Griffin.

Because the Defendant has offered a legitimate, nondiscriminatory reason for choosing a different candidate over Ms. Griffin, the burden of production accordingly shifts to Ms. Griffin, who has the opportunity to show that the articulated reason is a mere pretext for age discrimination. See Chapman, 229 F.3d at 1024 (citation omitted). She may do so either by demonstrating that the Secretary's proffered non-discriminatory reason is unworthy of credence, or by showing that age was more likely than not the motivating factor in the decision. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991). Ms. Griffin, however, is unable to make either showing.

First, Ms. Griffin has failed to offer any evidence tending to show that Secretary Harvey's evidence is unworthy of credence. Ms. Griffin alleged in her EEO complaint that Mr. Sims was "looking for some one with diversity in their background" (Ex. 13 to Griffin Dep.) -- apparently referring to work-related "background and experience," and more appropriately, "transformation experience." (June OCI Tr. 58:9-15.)[18] Ms. Griffin argues that her credentials were "far superior" to those of Ms. Bruneau and

[18] It is apparent from context that Mr. Sims, not Ms. Griffin as the transcript suggests, actually spoke these words.

that there was no legitimate reason to select Ms. Bruneau above her.[19] (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 14.) In contrast, Mr. Sims testified that with he was "impressed by the work [Ms. Bruneau] had done and the variety of her experiences and background" (June OCI Tr. 12:18-19) -- in particular her work for the United States Army European Command as they were transforming and downsizing. In addition, as noted above, he was impressed by Ms. Bruneau's answers regarding her commitment to adapting and transforming the Army. Secretary Harvey has asserted that the position was created as part of a departmental reform, and thus open-mindedness to transformation was particularly important in assessing candidates, in addition to prior FTS and supervisory experience. And although Ms. Griffin suggested in her EEO Complaint that she had many more years of FTS and supervisory experience than did Ms. Bruneau, this allegation is not otherwise adequately supported by the record. In particular, Ms. Griffin has not provided any

[19]Ms. Griffin alleges that a "younger applicant with no supervisory experience was selected compared to [Ms. Griffin's] 22 years of management experience . . . ." (Griffin Decl. ¶ 6). In addition, her EEO complaint lists her "twenty years' [sic] of experience in managing Full Time Support (["FTS"]) resources for the US Army Reserves," as well as "Branch, Division, and Deputy Directorate supervisor positions establishing policies for all USAR units with regard to FTS resources." (Ex. 13 to Griffin Dep.) In comparison, Ms. Griffin alleges (again, in her EEO complaint, not in her "Statement of Facts") that Ms. Bruneau had only two years of experience in working for the USAR in FTS management, she worked primarily for the Active Component of the Army and did not have FTS resource management, and that she held only one supervisory position in her career, in which she managed six employees.

actual comparison of Ms. Griffin and Ms. Bruneau in her "Statement of Facts" or pleadings, but rather looks to the court to make such a comparison based on their attached resumes.[20] Without a factual basis for Ms. Griffin's allegations that her qualifications are "objectively superior," and also based on Mr. Sims uncontroverted testimony regarding how he evaluated the candidates, the court may not conclude

[20]The court acknowledges that in her response, Ms. Griffin characterizes her qualifications as "objectively superior," and, in a footnote to that proposition, directs the court's attention to "Exhibit Q," constituting 15 pages of "Ms. Griffin and Ms. Bruneau's on-line applications, together with the Position Description and Vacancy Announcement, describing the job duties . . . ." (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 24 & n.16.). However, this footnote fails to meet Ms. Griffin's burden of production.

The first problem with this attachment is that Exhibit Q contains two resumes: Ms. Griffin's, and another resume with the name redacted, such that the court has no indication, other than Ms. Griffin's say-so, that this latter resume is Ms. Bruneau's. The second, and larger, problem with Ms. Griffin's Exhibit Q is that she has failed to provide the court with any context to assess the relative level of supervisory or FTS experience supposedly demonstrated by a comparison of the two resumes. It is not the court's duty to scour the record in search of facts that will support Ms. Griffin's case. Rather, Ms. Griffin has a burden to provide sufficient evidence to show the court that the Secretary's proffered selection reason is unworthy of credence. Directing the court to resumes and position descriptions, and asking the court to decide whether Ms. Griffin's level of experience makes Defendant's proffered explanation unworthy of credence, does not meet that burden of production.

Notwithstanding the above, the court notes that upon examination of the position description in Exhibit Q, the only relevant listed qualifications and requirements are essentially that the applicant: be GS-12 and above, have one year of experience directly related to the occupation, have one year of experience in the same or similar work equivalent, have 52 weeks of federal service at the second lower grade (or equivalent), and be able to obtain and maintain a secret security clearance. It also mentioned that the experience described in the applicant's resume would be "evaluated as related to the qualifications, knowledge, skills and abilities required for this job." (See Ex. Q to Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J.) Ms. Griffin has not given any indication that Ms. Bruneau fails to meet the minimum qualifications or requirements for the position.

that the Secretary's proffered reason was pretextual or otherwise unworthy of credence.

Moreover, even were the court to decide after a review of the two resumes that Ms. Griffin were better qualified in terms of FTS and supervisory experience, Mr. Sims alleges that he rated both candidates as "outstanding" in the element of "experience with full time support [FTS] manpower analysis, requirements and authorizations." (June OCI Tr. 19:5-6, 9.) Ms. Griffin does not challenge this classification or otherwise suggest to the court that it was anything but Mr. Sims's accurate appraisal of her FTS experience. The court has no information, again other than Ms. Griffin's unsupported EEO allegations, about Ms. Bruneau's supervisory experience -- and supervisory experience was allegedly not even one of the most important five factors used in selecting the candidate for this position. In sum, even assuming Ms. Griffin has had more years of FTS experience and more supervisory experience (which is not adequately supported by the record), the Secretary indicated that Mr. Sims rated both candidates' FTS experience the same, and did not consider supervisory experience one of the most important factors. Rather, Secretary Harvey suggests that adaptability and transformation was a very important factor, and rated Ms. Bruneau higher in that area. Since Ms. Griffin has failed to adequately support the record to demonstrate her purportedly superior experience or qualifications for

the advertised position, Ms. Griffin has failed to show that Defendant's articulated reason was a mere pretext for age discrimination. Accordingly, Defendant's Motion for Summary Judgment regarding Ms. Griffin's age discrimination claims is hereby GRANTED.

**E. Count Four: Retaliation under Title VII**

Title VII of the Civil Rights Act, in addition to protecting against discrimination based on enumerated protected classes, also prohibits retaliation based on engaging in certain protected activities, including when an employee opposes "any practice made an unlawful employment practice by this subchapter" or has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Ms. Griffin contends she suffered from illegal employment retaliation in violation of Title VII when the Secretary failed to reclassify her position as a GS-14 position and also when he failed to select her for positions subsequently filled by Mr. Taylor[21] and Ms. Bruneau. Secretary Harvey argues that (1) Ms. Griffin has not met her prima facie burden as to the reclassification action, and (2) that she has also failed to establish that the Secretary's explanation for hiring Ms. Bruneau for the Operations

[21] All claims pertaining to the selection of Mr. Taylor have been dismissed supra part II.D.3. for failure to timely exhaust administrative remedies.

Officer position was a pretext for age discrimination.

In order to establish a prima facie claim of retaliation under Title VII, the plaintiff must show "(1) that there was a statutorily protected participation, (2) that an adverse employment action occurred, and (3) that there was a causal link between the participation and the adverse employment action." Whatley v. Metro. Atlanta Rapid Transit Auth., 632 F.2d 1325, 1328 (5th Cir. 1980). In addition, the Eleventh Circuit requires that the employer be aware of the employee's protected activities. Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999).

Once a plaintiff establishes the prima facie case, the burden of production shifts to the defendant to rebut the inference of discrimination by articulating a legitimate, non-discriminatory reason for its action. Holifield, 115 F.3d at 1564. "The effect of the presumption of discrimination created by the establishment of the prima facie case is to shift to the employer the burden of producing legitimate, nondiscriminatory reasons for the challenged employment action." Combs, 106 F.3d at 1528. To satisfy this burden of production, the defendant need not persuade the court that it was actually motivated by the proffered reasons. Burdine, 450 U.S. at 254. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id. at 254-55.

**1. Reclassification**

Ms. Griffin asserts that her conversation with Mr. Williamson that took place in May 2002 constituted statutorily-protected participation. The court has already found that Ms. Griffin's learning of the CPAC's decision did not constitute an "adverse employment action." See supra note 10. Rather, the adverse employment action was Mr. Williamson's disapproval, in October of 2001, of reclassification of her position to GS-14, which Ms. Griffin learned about in February 2002. Since Ms. Griffin found out about this adverse decision in May 2002, well before the protected activity, she cannot establish a causal link between her protected activity and the adverse employment action, and she is unable to make out a prima facie case of retaliation. Therefore, Defendant's Motion for Summary Judgment on this claim is GRANTED.

**2. Hiring of Ms. Bruneau**

There is no debate that Ms. Griffin timely filed her EEO claim with respect to the selection of Ms. Bruneau for the Operations Officer position. Therefore, the court will consider whether Plaintiff has met her prima facie burden by presenting facts adequate to permit an inference of discrimination. Plaintiff has met this burden by establishing that (1) she engaged in protected activity by filing an EEO complaint in 2003, (2) she suffered an adverse employment action when she was not hired for that position, and (3) these actions were causally linked since Mr. Williamson (the adverse

party in her EEO complaint) was listed as the selecting official for the Operations Officer position, and also hired the interviewer for that position, Mr. Sims. See Whatley, 632 F.2d at 1328.

Since Ms. Griffin established her prima facie case, Defendant must then come forward with legitimate, non-discriminatory reasons for the decision. As discussed extensively above, see supra part II.D.4, Defendant has done so. Therefore, Ms. Griffin again has the burden of production to allege sufficient evidence to allow a reasonable factfinder to conclude that the Defendant's explanation was unworthy of credence, or that a retaliatory motive more likely than not animated the decision. For the same reasons as those discussed extensively above in the context of her Age Discrimination claim, Plaintiff has failed to come forward with sufficient evidence for a reasonable factfinder to conclude that the Secretary's proffered reasons for hiring an alternative candidate was pretextual. Accordingly, Defendant's Motion for Summary Judgment on all retaliation claims is hereby GRANTED.

## III. Jurisdiction over Ms. Griffin's EPA Claims

In addition, during an earlier proceeding in this case, Magistrate Judge Feldman, by Order of August 3, 2005, ruled that this court does not have subject matter jurisdiction over Ms. Griffin's EPA claims to the extent they exceed $10,000. This is so because jurisdiction over EPA claims is governed by the Tucker Act, which

gives district courts concurrent jurisdiction (along with the Court of Federal Claims) over all non-tort statutory civil claims that do not exceed $10,000 against the United States. See 28 U.S.C. § 1346(a)(2). The Court of Federal Claims has exclusive jurisdiction over all claims in excess $10,000. See 28 U.S.C. § 1491(a)(1); Ware v. United States, 626 F.2d 1278, 1287 (5th Cir. 1980) ("[T]he Court of Claims has exclusive jurisdiction of a Tucker Act claim in excess of $ 10,000 . . . [while f]ederal district courts are granted concurrent jurisdiction with the Court of Claims only over suits for $ 10,000 or less.") (citations omitted).

Furthermore, Secretary Harvey has alleged, and Ms. Griffin has not disputed, that Ms. Griffin's claims exceed $10,000. Accordingly, the court hereby ORDERS MS. GRIFFIN TO SHOW CAUSE, within ten days of the date of this Order, why her remaining EPA claims should not be immediately transferred to the Court of Federal Claims.

## IV. Summary

Defendant's Motion for Summary Judgment [Doc. No. 39] is hereby GRANTED IN PART and DENIED IN PART. Specifically, Defendant's Motion for Summary Judgment regarding Plaintiff's Title VII gender discrimination and retaliation claims, as well as her ADEA claims, is GRANTED, and those claims are hereby DISMISSED. Defendant's Motion for Summary Judgment as to Plaintiff's EPA claim is hereby

DENIED. However, because the EPA claim is the only remaining one in the present suit, and this court does not have subject matter jurisdiction over this claim to the extent it is in excess of $10,000 (and Ms. Griffin does not dispute that it is), this court hereby ORDERS MS. GRIFFIN TO SHOW CAUSE why her remaining EPA claim should not be immediately transferred to the Court of Federal Claims. Ms. Griffin has ten days from the date of this Order to make this showing.

IT IS SO ORDERED, this 14th day of December, 2006.

s/Beverly B. Martin
BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HILDA M. GRIFFIN,<br><br>Plaintiff,<br><br>v.<br><br>FRANCIS J. HARVEY, in his official capacity as Secretary of the Army,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION FILE<br>NO. 1:05-CV-0355-BBM |

**ORDER**

By Order of December 14, 2006, this court ordered plaintiff Hilda M. Griffin ("Ms. Griffin") to show cause why this action should not be immediately transferred to the U.S. Court of Claims. Ms. Griffin has made no such showing. Furthermore, the court believes, for the reasons stated in its December 14, 2006 Order, that this case is properly one to be decided in the U.S. Court of Claims. Therefore, the Clerk is DIRECTED to transfer this action to that court.

IT IS SO ORDERED, this 5th day of January, 2007.

s/Beverly B. Martin
BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **HILDA M. GRIFFIN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **1:05-CV-355-BBM-JMF** |
| **FRANCIS J. HARVEY,** | : | |
| **Secretary of the Army,** | : | |
| **DEPARTMENT OF THE ARMY,** | : | |
| **and KENNETH N. WILLIAMSON,** | : | |
| **US Army Reserve Command,** | : | |
| **in his official capacity** | : | |
| | : | |
| **Defendant.** | : | |

**ORDER**

The Plaintiff, an employee of the United States Army Reserve Command Headquarters at Fort McPherson, has filed a Civil Rights employment discrimination complaint pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e-16) (Title VII), the Equal Pay Act (29 U.S.C. §206(d)(1),[1] and the Age Discrimination in Employment Act (ADEA) (29 U.S.C. 633a) against Francis J. Harvey, Secretary of the Army; the Department of the Army; and Kenneth N. Williamson, Chief Executive office, U.S. Army Reserve Command. [Doc. 1]

On June 15, 2004, the defendants filed a Fed.R. Civ.P. 12(b)(1), (2), (3) and (6) Motion to Dismiss contending that the Plaintiff improperly named two defendants in

---

[1]In the event the Plaintiff seeks more than $10,000.00 in lost wages, she must file her claim in the United States Court of Claims.

their individual and official capacities: the Department of the Army, and Kenneth N. Williamson in his official capacity. The only properly named Defendant in the Title VII and ADEA counts is the Secretary of the Army, Francis J. Harvey. See 42 U.S.C. §2000e-16; See Bechtel v. U.S. Office of Personnel Management, 549 F. Supp. 111, 113 (N.G.Ga. 1982); Honeycutt v. Long, 861 F.2d 1346, 1348-49 (5th Cir. 1988); Welch v. Laney, 57 F.3d 1004, 1010-11 (11th Cir. 1995). The Defendants also assert that the Plaintiff failed to timely assert her claim of a discriminatory denial of promotion, as the action denying her a promotion took place in 1999 but she did not file an administrative complaint until January 2002, more than three years thereafter. See 29 C.F.R. §1614.105 (a)(1); Manning v. Carlin, 786 F.2d 1108 (11th Cir., 1986). Defendants also contend that this Court lacks subject matter jurisdiction over any claim in excess of $10,000.00. This Court is compelled to agree with each of the Defendant's arguments.

IT IS THEREFORE ORDERED that The Department of the Army and Kenneth N. Williamson are hereby DISMISSED as Defendants in both their official and individual capacities.

IT IS FURTHER ORDERED that, in the event the Plaintiff claims more than $10,000.00 in, inter alia, lost wages, this case must be transferred to the United States Court of Claims.

IT IS SO ORDERED this 2nd AUGUST 2005.

S/JOEL M. FELDMAN
JOEL M. FELDMAN
UNITED STATES MAGISTRATE JUDGE