# In The United States Court of Federal Claims

No. 07-318C

(Filed: December 23, 2008)

_____

| | |
|---|---|
| HILDA M. GRIFFIN, | * |
| | * Motion to dismiss for lack of jurisdiction; |
| Plaintiff, | * 28 U.S.C. § 1500; "Simultaneously" filed |
| | * claims arising under 28 U.S.C. § 1631; |
| v. | * *County of Cook* applied and analyzed; |
| | * Motion to dismiss granted. |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |

_____

**OPINION**

_____

*Robert Ernest Rigrish*, Bodker, Ramsey, Andrews, Winograd & Wildstein, Atlanta, GA, for plaintiff.

*Robert E. Chandler*, Commercial Litigation Branch, U.S. Department of Justice, with whom was *Peter D. Keisler*, Assistant Attorney General, for defendant.

**ALLEGRA, Judge:**

Section 1500 of Title 28 of the U.S. Code bars litigation in this court of the same dispute "pending" in another court. Passed shortly after the Civil War, and long outlasting its original purpose, this gatekeeper provision has oft been described as an "anachronism"[1] and a "trap for

---

[1] *See, e.g.*, *Nat'l Union Fire Ins. Co. v. United States*, 19 Cl. Ct. 188, 190 (1989); *Dwyer v. United States*, 7 Cl. Ct. 565, 567 (1985); *A.C. Seeman, Inc. v. United States*, 5 Cl. Ct. 386, 389 (1984); *see also Keene Corp. v. United States* 508 U.S. 200, 217 (1993) ("The trial judge in this case was not the first to call this statute anachronistic"); *Passamaquoddy Tribe v. United States*, 82 Fed. Cl. 256, 262 (2008) ("The jurisdictional bar in § 1500 has been much criticized for being an awkward tool that has outlived its original purpose."); Eric C. Bruggink, "A Modest Proposal," 28 Pub. Cont. L.J. 529, 539 (1999) ("Section 1500 remains something of a judicial coelacanth, still swimming around despite its Civil War era rationale."); David Schwartz, "Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents," 55 Geo. L.J. 573 (1967) (hereinafter "Schwartz").

the unwary."[2] It requires little to see why. File a lawsuit in this court on Monday and another involving the same claims in a U.S. district court on Tuesday, and all is jurisdictionally well, despite having two lawsuits involving the same claims pending in two different courts. Reverse the order, however, that is, by filing that same lawsuit in the district court even an instant before the second lawsuit is filed here, and section 1500 then obliges this court to dismiss the latter suit even though the situation initially encountered – two lawsuits involving the same claims pending in two different courts – is just like in the first example. And this dismissal happens, understand, even when the claims filed here would, apart from section 1500, fall squarely within this court's jurisdiction and wholly outside that of the district court. While some would say this makes no sense, at least it is dictated by the plain language of the statute, such as it is.

One might expect that a statute leading to such incongruous results would be construed no broader than its language requires. But, this is not so, as the precedents that control this case illustrate. In the case *sub judice*, plaintiff filed a four-count lawsuit in a U.S. district court. The district court granted summary judgment as to three of those counts, but correctly concluded that a fourth should be transferred to this court under 28 U.S.C. § 1631. After this, plaintiff filed a new transfer complaint in this court reasserting the count transferred from the district court, plus another. By virtue of the operation of section 1631, the lawsuit here is deemed to have been filed on the same date and at the same time as the district court suit was filed – in other words, the relevant claims here were "simultaneously" filed in this court and the district court. Defendant has now moved to dismiss the complaint under RCFC 12(b)(1), invoking the aforementioned section 1500, as well as the Federal Circuit's decision in *United States v. County of Cook, Ill.*, 170 F.3d 1084 (Fed. Cir. 1999). While, with all due respect, this court believes that *County of Cook* was wrongly decided, that case remains binding precedent and obliges this court to **GRANT** defendant's motion.

I.

A brief recitation of the facts provides necessary context.[3]

---

[2] *See, e.g.*, *d'Abrera v. United States*, 78 Fed. Cl. 51, 56 n.10 (2007); *Vaizburd v. United States*, 46 Fed. Cl. 309, 309-10 (2000); *see also*; Payson R. Peabody, Thomas K. Gump, Michael S. Weinstein, "A Confederate Ghost that Haunts the Federal Courts: The Case for Repeal of 28 U.S.C. § 1500," 4 Fed. Cir. B.J. 95 (1994) (hereinafter "Peabody"); George W. Miller and Jonathan L. Abram, "A Survey of Recent Takings Cases in the Court of Federal Claims and the Court of Appeals for the Federal Circuit," 42 Cath. U. L. Rev. 863, 892 (1993) ("[t]hat rule is a trap for the unwary").

[3] These facts are drawn from plaintiff's transfer complaint and, for purpose of this motion, are assumed to be correct. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Additional procedural details are drawn from plaintiff's district court complaint and the latter court's dismissal order.

On February 4, 2005, Hilda M. Griffin (plaintiff) filed a complaint in the United States District Court for the Northern District of Georgia. In that complaint, plaintiff asserted that she had suffered gender and age discrimination at the hands of her employer, the United States Army Reserve Command at Ft. McPherson, Georgia. That discrimination, she claimed, took various forms – failing to classify properly her current position; failing to select her for various positions when she was the better-qualified candidate; and retaliating against her after she pressed her claims of discrimination. There were four counts in this complaint:

- **Count I** asserted that plaintiff had suffered gender discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII) when the Army failed to classify properly her position. This count sought: (i) equitable relief in the form of a retroactive promotion; (ii) back pay equal to the difference between her earnings at her current grade and what she would have earned if properly classified; (iii) interest on the back pay differential; (iv) compensatory damages under 42 U.S.C. § 1981a for her nonpecuniary losses; (v) reasonable attorneys' fees, costs and disbursements; and (vi) if permitted by law, punitive damages.

- **Count II** asserted that plaintiff was entitled to relief under the Equal Pay Act of 1963 (EPA) for not receiving equal compensation for performing substantially the same work as a male counterpart. This count sought: (i) equitable relief in the form of a retroactive promotion; (ii) back pay equal to the difference between her earnings at her current grade and what she would have earned at the next grade level; (iii) liquidated damages in an amount equal to the aforementioned back pay differential; (iv) interest on the back pay differential; and (v) reasonable attorneys' fees, costs and disbursements.

- **Count III** asserted that plaintiff had been subjected to age discrimination in violation of the Age Discrimination in Employment Act of 1967 (the ADEA), when her position was not reclassified and she was refused a promotion. This count sought relief similar to those requested under Count II.

- **Count IV** asserted that the Army had retaliated against her in violation of Title VII when she protested what she believed to be its discriminatory conduct. This count sought relief that was a combination of that claimed in Counts I and II.

On August 2, 2005, a magistrate judge ruled that the district court did not have subject matter jurisdiction over Ms. Griffin's EPA claim to the extent that it exceeded $10,000. The

magistrate judge took no further action with respect to that claim at that time. On December 14, 2006, the district court granted, in part, and denied, in part, a summary judgment motion filed by the government. In its order, the district court granted defendant summary judgment as to Count I (the sex discrimination claims under Title VII), holding that plaintiff had failed to consult timely with an EEO counselor. As to Count II (the EPA claim), the district court held that genuine issues of material fact existed, requiring it to deny defendant's motion for summary judgment. Regarding Count III (the ADEA claim), the court concluded that defendant was entitled to judgment as a matter of law because Ms. Griffin had failed to rebut defendant's evidence that the actions taken against her were not the result of age discrimination. The district court reached a similar conclusion regarding Count IV (the retaliation claim), again finding that Ms. Griffin had failed to rebut defendant's evidence that actions taken with respect to her were not animated by a retaliatory motive. Finally, harkening back to the magistrate judge's earlier ruling, the district court ordered Ms. Griffin to show cause why her remaining EPA claims should not be transferred to this court. On January 5, 2007, the district court ordered that the case be transferred to this court.

On June 19, 2007, plaintiff filed her transfer complaint. Count I of that complaint essentially restated Count II of her district court complaint (the EPA count), seeking the same relief. Count II of the complaint again asserted that the Army had retaliated against plaintiff, but this time claimed damages based upon a violation of section 215(a)(3) of the Fair Labor Standards Act. The relief requested under this count was essentially identical to that requested in Count IV of plaintiff's district court complaint. On August 20, 2007, defendant filed a motion to dismiss the case for lack of jurisdiction under RCFC 12(b)(1). Following briefing, oral argument on the motion was conducted on June 10, 2008.

II.

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted); *see also Bell Atl. Corp.*, 127 S. Ct. at 1964-65. In particular, the plaintiff must establish that the court has subject matter jurisdiction over its claims. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Hansen v. United States*, 65 Fed. Cl. 76, 94 (2005). Here, defendant claims that jurisdiction is lacking owing principally to the application of 28 U.S.C. § 1500.

A.

Section 1500 of Title 28 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim
> for or in respect to which the plaintiff or his assignee has pending in any other
> court any suit or process against the United States or any person who, at the time

> when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

"The words of the statute are plain," the Supreme Court long ago stated. *Corona Coal Co. v. United States*, 263 U.S. 537, 540 (1924). They speak in terms of subject matter jurisdiction and, as later described by the Supreme Court, "bar jurisdiction over the claim of a plaintiff who, upon filing [with the Court of Federal Claims], has an action pending in any other court 'for or in respect to' the same claim." *Keene*, 508 U.S. at 209; *see also Nez Perce Tribe v. United States*, 83 Fed. Cl. 186, 189 (2008). To determine whether this statute applies here, the court must answer two questions: (i) whether the district court action was "pending" at the time the action in this case is deemed to have arisen; and (ii) if so, whether the claims presented to the district court action were the same as those in the instant case. *See Firebaugh Canal Water Dist. v. United States*, 70 Fed. Cl. 593, 597 (2006).

In doing so, account must be given to the fact that this lawsuit arose under 28 U.S.C. § 1631. The express terms of that provision require this court to treat the transferred claim "as if it had been filed . . . on the date upon which it was actually filed in . . . the court from which it is transferred." 28 U.S.C. § 1631. By operation of this provision, the EPA claim transferred by the district court to this court and those claims decided by the district court are deemed to have been filed concurrently because they were part of the same complaint, originally filed in the district court. In similar circumstances, the Federal Circuit has held that transferred and non-transferred claims be treated, for purposes of section 1500, as being filed "simultaneously," that is, at exactly the same time. *See County of Cook*, 170 F.3d at 1090; *see also d'Abrera*, 78 Fed. Cl. at 56. But, does that mean that the district court action here should be deemed "pending" at the time the transferred claim was filed, so as to trigger section 1500?

*Tecon Engineers v. United States*, 343 F.2d 943 (Ct. Cl. 1965), *cert. denied*, 382 U.S. 976 (1966), would suggest otherwise. The Court of Claims there concluded that "the only reasonable interpretation of [section 1500] is that it serves to deprive this court of jurisdiction of any claim for or in respect to which plaintiff has pending, in any other court any suit against the United States, only when the suit shall have been commenced in the other court ***before*** the claim was filed in this court." *Id*. at 949 (emphasis added). The Federal Circuit repudiated *Tecon* in its *en banc* decision in *UNR Indus. Inc. v. United States*, 962 F.2d 1013 (Fed. Cir. 1992). But, when the latter decision was affirmed, *sub nom.*, by the Supreme Court in *Keene*, the Supreme Court found it "unnecessary" to consider *Tecon*. *Keene*, 508 U.S. at 216. Thereafter, in *Hardwick Bros. Co. II v. United States*, 72 F.3d 883, 886 (Fed. Cir. 1995), the Federal Circuit declared unequivocally that "*Tecon Engineers* remains good law and binding on this court." *See also Nez Perce Tribe*, 83 Fed. Cl. at 190. Under *Tecon*, the simultaneous filing of claims in the district court and this court seemingly would not trigger section 1500 as the former would not be "before" the latter.

The Federal Circuit, however, has twice reached the opposite conclusion – in *County of Cook* and *Harbuck v. United States*, 378 F.3d 1324, 1328 (Fed. Cir. 2004). In both cases, a plaintiff originally filed a complaint against the United States in district court. And, in each, the district court transferred some, but not all, of the claims from the original complaint to this court under section 1631. In *County of Cook*, the Federal Circuit quoted the above language from *Tecon* but held that the facts in that case, which did not involve simultaneously-filed claims, rendered the quotation "dictum with respect to the simultaneous filing issue." 170 F.3d at 1090. "Finding neither the language of the statute nor the legislative history enlightening," the Federal Circuit relied instead upon the "established policies of § 1500," which it described as forcing plaintiffs to choose between pursuing their claims in this court or another court and "'protect[ing] the United States from having to defend two lawsuits over the same matter simultaneously." *Id*. at 1091. Based upon this analysis, the court then stated –

> These policies are promoted by precluding jurisdiction in the Court of Federal Claims over claims which had been previously filed in the district courts, and nothing suggests that these policies would not similarly be promoted by precluding jurisdiction in the simultaneous filing context. Accordingly, we hold that the "filing" of the same claim simultaneously in the district court and the Court of Federal Claims by operation of § 1631 deprives the latter court of jurisdiction pursuant to § 1500.

*Id*. The Federal Circuit followed this holding in *Harbuck*, 378 F.3d at 1328, a case with facts remarkably similar to those in the case *sub judice*. Both *County of Cook* and *Harbuck* thus compel this court to conclude that the district court complaint here was "pending" when plaintiff's EPA claim was deemed filed under section 1631. *See also Nez Perce Tribe*, 83 Fed. Cl. at 191-92; *d'Abrera*, 78 Fed. Cl. at 56.

The court must next determine whether that EPA claim was the "same" as one or more of plaintiff's other claims in the district court. "Deciding if the claims are the same or distinctly different requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1549 (Fed. Cir. 1994) (en banc); *see also Keene*, 508 U.S. at 210-13; *Harbuck*, 378 F.3d at 1328; *Schrader v. United States*, 75 Fed. Cl. 242, 246-47 (2007). For such claims to be the "same," they "must arise from the same operative facts, and must seek the same relief." *Loveladies Harbor*, 27 F.3d at 1551; *see also County of Cook*, 170 F.3d at 1091. On the one hand, "[c]laims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court." *Harbuck*, 378 F.3d at 1329 (quoting *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1567 (Fed. Cir. 1988), *cert. denied*, 489 U.S. 1066 (1989)); *see also British Am. Tobacco Co. v. United States*, 89 Ct. Cl. 438, 440 (1939); *Eastern Shawnee Tribe of Oklahoma v. United States*, 82 Fed. Cl. 322, 326 (2008). On the other, "'[c]laims involving the same general factual circumstances, but distinct material facts[,] can fail to trigger section 1500." *Eastern Shawnee Tribe*, 82 Fed. Cl. at 326 (quoting *Branch v. United States*, 29 Fed. Cl. 606, 609 (1993)); *see also d'Abrera*, 78 Fed. Cl. at 58-59. "In short," this

court has summarized, "if a material factual difference exists between two claims, they are not the same for purposes of Section 1500." *d'Abrera*, 78 Fed. Cl. at 58; *see also Heritage Minerals, Inc. v. United States*, 71 Fed. Cl. 710, 716 (2006).

Here, it appears that plaintiff's EPA claim and her district court Title VII claim both arose out of the same operative facts: the Army's alleged commission of gender discrimination in paying her less compensation than it paid to men performing the same or substantially similar work. Indeed, a review of the complaints reveals that the factual nature of the allegations and the description of the relief sought are very similar. That plaintiff's Title VII claim focused on her non-selection for promotion, and her EPA claim centered around her failure to receive the same pay as male counterparts, does not distinguish these claims. Rather, these claims essentially represent different legal theories based upon the same operative facts and thus, under the precedents outlined above, are treated as being the same for purposes of section 1500. Indeed, the Federal Circuit dealt with nearly identical claims in *Harbuck* – a Title VII claim and an EPA claim, both based upon gender discrimination. Affirming a decision of this court, *Harbuck v. United States*, 58 Fed. Cl. 266 (2003), the Federal Circuit held that the two claims arose out of the same set of operative facts, reasoning that "[t]he difference between the two theories upon which [plaintiff] relies are but different manifestations of the same underlying claim that the Air Force discriminated against women by paying them less than men." *Harbuck*, 378 F.3d at 1329; *see also Yankton Sioux Tribe v. United States*, 84 Fed. Cl. 225, 233 (2008); *Eastern Shawnee Tribe*, 82 Fed. Cl. at 326. The court sees no reason to conclude otherwise.

It also appears that the claims in question involve the "same relief." *Keene*, 508 U.S. at 212. For section 1500 to apply, the relief requested need not be identical – rather, there need only be "some overlap in the relief requested." *Id.*; *see also Harbuck*, 378 F.3d at 1329; *Eastern Shawnee*, 82 Fed. Cl. at 327. "Thus," this court has stated, "the inclusion of other and different requested relief does not bar application of [s]ection 1500." *Eastern Shawnee Tribe*, 82 Fed. Cl. at 327; *see also Keene*, 508 U.S. at 212; *Loveladies Harbor*, 27 F.3d at 1552. In short, the "relevant inquiry is 'will the relief, in substance, be the same?'" *Eastern Shawnee Tribe*, 82 Fed. Cl. at 328 (quoting *Tohono O'odham Nation v. United States*, 79 Fed. Cl. 645, 656 (2007)). There is little doubt that the answer to that question here is "yes." Indeed, the claims for relief in plaintiff's Title VII count in her district court complaint are nearly a carbon copy of those in her EPA claim now filed here. Accordingly, the conclusion is inescapable that the "same relief" is sought by those claims for purposes of section 1500.

In sum, then, under *County of Cook*, the court is compelled to conclude that the district court claim was "pending" at the time the suit here is deemed filed under section 1631. It also finds that the claims that were filed in the district court case are the same as those presented here. As such, section 1500 applies and Count I of plaintiff's complaint must be dismissed.[4]

---

[4] Defendant has argued – and the court agrees – that Count II in plaintiff's transfer complaint is little more than a reprise of Count IV in her district court complaint. The district court's adverse ruling on the latter count is thus *res judicata*, requiring the court to dismiss the

B.

That said, a nagging question lingers here – was *County of Cook*, with its "simultaneous filing" rule, decided correctly?  Merely posing this question causes discomfort, as it is not the sort of question that a trial judge ordinarily asks.  But, this is a rare instance, in which the sweep of the precedent involved and its impact on the fair and efficient determination of many actions before this court compel the court to attempt to explain – with every respect – why it feels that *County of Cook* was wrongly decided.  Three reasons seemingly support that view.

1.  While the court in *County of Cook* held that the statutory language was "not enlightening," there is reason to believe that the language in the statute is inconsistent with the "simultaneous filing" rule.  Earlier decisions looked to the statute's language as providing some sense of Congressional intent, finding, in particular, that the "has pending" language of section 1500 is "plain, with nothing in the context to make [its] meaning doubtful," *Corona Coal*, 263 U.S. at 540, and "quite explicit," *Johns-Manville Corp.*, 855 F.2d at 1565.  In *Nez Perce Tribe*, Judge Lettow construed that language thusly – "Grammatically, the words 'has pending' in the statute constitute a present participle which 'convey[s] the same meaning' as the present perfect tense and 'indicates action that was started in the past and has recently been completed or is continuing up to the present time.'" 83 Fed. Cl. at 189 (citing William A. Sabin, The Gregg Reference Manual, §§ 1033-34, at 272-73 (10th ed. 2005)).  Under this interpretation of section 1500, for a district court case to prime this court's jurisdiction, it must be "started in the past," and thus be pending ***before*** the case in this court is filed or deem filed.  Reading the "has pending" language in this way comports with the original language of that section, as passed in 1868, which talked in terms of a suit that an individual "***shall have commenced*** and has pending."  Act of June 25, 1868, ch. 71, 15 Stat. 77 (emphasis added).  If there were any doubt that the action priming jurisdiction in this court must be filed before a suit is deemed filed here, Congress' use of this second present participle – "shall have commenced" – would seem to dispel it.  And this earlier version of the statute remains relevant because, as outlined below, the subsequent modification of the statute eliminating that language was not intended to change its meaning.

Given this, it is notable that while no case, prior to *County of Cook*, dealt directly with the "simultaneous filing" question, many cases have naturally read the statute as being triggered only where there is a preexisting lawsuit.  Principal among these is *Tecon*.  In that case, the court traced the legislative history of section 1500 back to its roots in 1868, focusing, in particular, upon the original language of the statute.  343 F.2d at 946-49.  Based upon that exegesis, the court found that section 1500 retains the "same clear meaning and intent," namely, to "prevent this court from taking jurisdiction of a claim ***only*** when the same plaintiff already 'shall have commenced and has pending' another suit on the same claim in another court."  *Id*. at 949 (emphasis added).  Other cases focusing upon the original language of the 1868 statute, and the

---

corresponding count here for failure to state a claim.  *See Carson v. Dep't of Energy*, 398 F.3d 1369, 1375 (Fed. Cir. 2005).

subsequent modifications thereto, have reached the same conclusion. *See Nez Perce Tribe*, 83 Fed. Cl. at 190; *Marks v. United States*, 24 Cl. Ct. 310, 316 (1991); *Conn. Dept. of Children & Youth Servs. v. United States*, 16 Cl. Ct. 102, 104 (1989); *Chavez v. United States*, 14 Cl. Ct. 212, 215 (1988); *see also Pitt River Home and Agric. Co-Op Ass'n*, 215 Ct. Cl. 959, 961 (1977). This reading of the statute, moreover, appears to comport with at least one Federal Circuit decision construing the same "has pending" language in 42 U.S.C. § 300aa-11(a)(5), a provision in the National Vaccine Injury Compensation Act that serves a gatekeeper function analogous to that of section 1500.[5]

In a later opinion, Judge Lettow observed, while further critiquing the "simultaneous filing" rule, that "[a]s a jurisdictional statute, Section 1500 ought to be construed with fidelity to its terms . . . and neither expanded nor contracted to reflect policy preferences that may or may not have led to their enactment." *d'Albrera*, 78 Fed. Cl. at 56 n.10 (citing *Stone v. Immigration and Naturalization Serv.*, 514 U.S. 386, 405 (1995)). Other cases have invoked this fidelity principle in refusing to read one statutory provision as limiting judicial review under another. *See Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1286-87 (D.C. Cir. 2004); *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 176 (2005). Nor does the canon requiring strict construction of waivers of sovereign immunity compel a broad reading of section 1500. The Supreme Court, in *Richlin Sec. Serv. Co. v. Chertoff*, 128 S. Ct. 2007, 2019 (2008), recently emphasized the limitations of that canon, stating –

> The sovereign immunity canon is just that – a canon of construction. It is a tool for interpreting the law, and we have never held that it displaces the other traditional tools of statutory construction. Indeed, the cases on which the Government relies all used other tools of construction in tandem with the sovereign immunity canon. *See Ardestani v. INS*, 502 U.S. 129, 137 . . . (1991) (relying on the canon as "reinforce[ment]" for the independent "conclusion that

---

[5] 42 U.S.C. § 300aa-11(b) authorizes individuals who have sustained vaccine-related injuries to file suit in this court. As originally enacted by Congress, section 300aa-11(a)(4), stated that "[i]f in a civil action brought against a vaccine manufacturer before the effective date of this subtitle damages were denied for a vaccine-related injury or death or if such action was dismissed with prejudice, the person who brought such action may file a petition under subsection (b) for such injury or death." 42 U.S.C. § 300aa-11(a)(4) (1988). Section 300aa-11(a)(5)(A) of title 42 further provided that – "A plaintiff who on the effective date of this subtitle has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after the effective date of this title or before judgment, whichever occurs first, elect to withdraw such action without prejudice and file a petition under section (b) for such injury or death." 42 U.S.C. § 300aa-11(a)(5)(A) (1988). Relying upon the language of these provisions, the Federal Circuit, in *Amendola v. Sec'y of HHS*, 989 F.2d 1180 (Fed. Cir. 1993), concluded that they both "address the question of pre-Act litigation," indicating elsewhere that the provisions applied to "those who had already filed an action for damages" prior to the statute's effective date. *Id*. at 1184.

> any ambiguities in the legislative history are insufficient to undercut the ordinary understanding of the statutory language"); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682, 685-686 . . . (1983) (relying on the canon in tandem with "historic principles of fee-shifting in this and other countries" to define the scope of a fee-shifting statute); *Department of Energy v. Ohio*, 503 U.S. 607, 626-627 . . . (1992) (resorting to the canon only after a close reading of the statutory provision had left the Court "with an unanswered question and an unresolved tension between closely related statutory provisions"); *see also Smith v. United States*, 507 U.S. 197, 201-203 . . . (1993) (invoking the sovereign immunity canon only after observing that the claimant's argument was "undermine[d]" by the "commonsense meaning" of the statutory language).

In that case, the Court concluded that "[t]here is no need for us to resort to the sovereign immunity canon because there is no ambiguity left for us to construe." *Richlin*, 128 S. Ct. at 2019; *see also Herren v. Farm Sec. Admin.*, 153 F.2d 76, 78 (8th Cir. 1946); *Lublin Corp. v. United States*, 2008 WL 5136198 at *10 n.1 (Fed. Cl. Dec. 3, 2008). Invocation of that canon thus provides no opportunity for a court either to depart from the ordinary meaning associated with language of a judicial review provision or to erect barriers to the exercise of that review.[6]

2. The legislative history of section 1500 provides no basis to depart from the plain meaning of the statutory language. Indeed, it confirms what Judge Lettow's careful parsing of the statutory language reveals – that Congress did not intend to bar a lawsuit from proceeding in this court as long as a similar claim was no longer pending before another court.

During the Civil War, the government seized property in the Confederate States pursuant to the Captured and Abandoned Property Act of 1863, ch. 120, 12 Stat. 820. Persons claiming ownership of that property could bring action against the United States in the Court of Claims to recover any proceeds from the sale of the property, but were required to prove that they had not given any aid or comfort to the rebellion. § 3, 12 Stat. 820. The "cotton claimants" (so-called because many of the claims related to seized cotton) not only brought a large number of actions against the United States in the Court of Claims, but also brought parallel tort actions against federal officials in other courts. *See Keene Corp.*, 508 U.S. at 206-07; Paul Frederic Kirgis, "Section 1500 and the Jurisdictional Pitfalls of Federal Government Litigation," 47 Am. U. L. Rev. 301, 303-04 (1997); Schwartz, *supra*, at 575-76.

Congress enacted the original version of Section 1500 – Section 8 of the Act of June 25, 1868, ch. 71, 15 Stat. 77 – to eliminate this dual litigation. Section 8 provided:

---

[6] *See Bowen v. City of New York*, 476 U.S. 467, 479 (1986) ("in construing the statute [the Court] must be careful not to 'assume the authority to narrow the waiver that Congress intended'") (quoting *United States v. Kubrick*, 444 U.S. 111, 118 (1979)); *see also* Gregory C. Sisk, "The Continuing Drift of Federal Sovereign Immunity Jurisprudence," 50 Wm. & Mary L. Rev. 517, 543-44, 574-75 (2008) (hereinafter "Sisk").

> And be it further enacted, That no person shall file or prosecute any claim or suit in the court of claims, or an appeal therefrom, for or in respect to which he or any assignee of his shall have commenced and has pending any suit or process in any other court against any officer or person who, at the time the cause of action . . . arose, was in respect thereto acting or professing to act, mediately or immediately, under the authority of the United States, unless such suit or process, if now pending in such other court, shall be withdrawn or dismissed within thirty days after the passage of this act.

*Id.* As has been reported in other cases, Senator George Edmunds of Vermont, the sponsor of the legislation (S. 164, 40th Cong., 2d Sess. (1868)), explained its purpose:

> The object of this amendment is to put to their election that large class of persons having cotton claims particularly, who have sued the Secretary of the Treasury and the other agents of the Government in more than a hundred suits that are now pending, scattered over the country here and there, and who are here at the same time endeavoring to prosecute their claims, and have filed them in the Court of Claims, so that after they put the Government to the expense of beating them once in a court of law they can turn around and try the whole question in the Court of Claims. The object is to put that class of persons to their election either to leave the Court of Claims or to leave the other courts. I am sure everybody will agree to that.

Cong. Globe, 40th Cong., 2d Sess. 2769 (1868). Although the statute thus was "*ad hoc* legislation aimed at a particular group of litigants who were then prosecuting suits" under the Captured and Abandoned Property Act, it "was drafted as general and permanent legislation." Schwartz, *supra* at 578.

The stated purpose of Section 8, then, was not to require the dismissal of all cases then pending in the Court of Claims that had been preceded by the filing of similar claims in other courts. Rather, the statute was designed to require plaintiffs to make an election between pursuing their case against the United States in the Court of Claims and continuing to pursue a similar claim against an agent of the government in another court. This reading is confirmed by several features in the original statute. It precluded individuals not only from filing, but also from "prosecut[ing]" a case in the Court of Claims, as well as "on appeal therefrom." The latter clauses would have been unnecessary had the mere preexistence of another case involving the same claim been enough to require the immediate dismissal of a subsequent Court of Claims case. Moreover, the statute gave such individuals thirty days within which to dismiss or withdraw the lawsuits filed in courts other than the Court of Claims, again suggesting that nothing about the timing of those lawsuits was determinative under the provision. Features such as these caused Mr. Justice Stone, writing on behalf of a unanimous Supreme Court in *Matson Nav. Co. v. United States*, 284 U.S. 352 (1932), to observe that –

> The declared purpose of the section . . . was only to require an election between a suit in the Court of Claims and one brought in another court against an agent of the Government, in which the judgment would not be *res ajudicata* in the suit pending in the Court of Claims.

*Id*. at 355-56; *see also* Schwartz, *supra* at 578.  Notably, in that case, the Court further instructed that "[a]s the words of the section are plain, we are not at liberty to add to or alter them to effect a purpose which does not appear on its face or from its legislative history." *Matson Nav. Co.*, 284 U.S. at 356; *see also Corona Coal*, 263 U.S. at 540.

Section 8 was incorporated into the Revised Statutes of 1874, but without the thirty-day savings clause included in the original statute.  *See* 2 Cong. Rec. 129 (1873) (statement of Rep. Butler).[7]  The 1874 version of the statute was later reenacted without change as Section 154 of the Judicial Code of 1911.  Act of Mar. 3, 1911, ch. 231, § 154, 36 Stat. 1138.  Thirty-seven years later, as part of a comprehensive revision of the laws, Congress again reenacted the statute as Section 1500 of the Judicial Code of 1948.  *See* Act of June 25, 1948, ch. 646, 62 Stat. 942.  The 1948 legislation made several changes, none of which was intended to be significant, *to wit*, it:  (i) deleted the phrase "or in the Supreme Court on appeal therefrom" as unnecessary; (ii) added the phrase "against the United States," apparently in order to bar simultaneous actions against the United States, as well as actions against federal officials; and (iii) replaced the phrase "No person shall file or prosecute" with "The Court of Claims shall not have jurisdiction of." *See* Reviser's Notes, 28 U.S.C. 1500, at 1862 (1948) (noting that "[c]hanges were made in phraseology"); H.R. Rep. No. 308, 80th Cong., 1st Sess. A140 (1947); William W. Barron, "The Judicial Code 1948 Revision," 8 F.R.D. 439 (1948).[8]  In *Keene Corp.*, 508 U.S. at 211-13, the Supreme Court cited this legislative history in concluding that it could rely upon the original

---

[7] The 1874 statute provided:

No person shall file or prosecute in the Court of Claims, or in the Supreme Court on appeal therefrom, any claim for or in respect to which he or any assignee of his has pending in any other court any suit or process against any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, mediately or immediately, under the authority of the United States.

Revised Statutes, Title 13, ch. 21, § 1067, 18 Stat. 197 (1874).

[8] The Supreme Court has repeatedly recognized that "no change in law should be presumed from the 1948 revision of the Judicial Code 'unless an intent to make such changes is clearly expressed.'" *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 n.4 (1989) (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 227 (1957)); *accord, e.g.*, *Keene Corp.*, 508 U.S. at 209 (citing cases); *Tecon Eng'rs, Inc.*, 343 F.2d at 949; *see also* Barron, 8 F.R.D. at 445-46.

wording of the statute to inform its modern meaning. The 1948 version of section 1500 has been carried into subsequent enactments without significant change.[9]

This legislative history leaves one grasping for the exact contours of section 1500. To be sure, there is evidence that Congress generally intended that litigants elect between pursuing a claim in this court or elsewhere, so as to avoid the true duplication of suits. But, nothing in the legislative history suggests that goal had to be accomplished in any specific way, particularly one that would command a broadened interpretation of the phrase "has pending." Nor is there any indication that section 1500 was intended to be an omnibus response to every situation in which defendant might find itself litigating the same claim in two courts. To the contrary, as noted in *Tecon*, the statute's "legal evolution in the Congress" makes clear that it was intended only to bar this court from litigating the claims of those who elected to file suit in another court prior to filing suit in this court. *Tecon*, 343 F.2d at 943; *see also Nez Perce Tribe*, 83 Fed. Cl. at 180-90; *Chavez*, 14 Cl. Ct. at 215; Peabody, *supra*, at 100. That drafting history, of course, is difficult to square with the "simultaneous filing" rule.

3. In the end, the court in *County of Cook* candidly admitted that its decision was neither rooted in the statute's language nor its legislative history, but rather based upon policy considerations. In this regard, the court explained –

> [W]e endeavor to further the established policies of § 1500, which are "to force plaintiffs to choose between pursuing their claims in the Court of [Federal] Claims or in another court," . . . and to "protect the United States from having to defend two lawsuits over the same matter simultaneously."

170 F.3d at 1090 (quoting *UNR*, 962 F.2d at 1018-19). But, particularly with reference to this court's experience with section 1500, there are a host of reasons why these policy considerations may not support the "simultaneous filing" rule.

a. First, it is debatable whether such broad policy considerations should be determinative here. In *Keene*, the Supreme Court made short shrift of the policy arguments made by the claimant there, contending that the "proper theater" for such argument was Congress. *See Keene*, 508 U.S. at 217-18; *see also Johns-Manville Corp.*, 855 F.2d at 1565; *Forsgren v. United States*, 73 Fed. Cl. 135, 141 (2006). Seemingly, a similar response ought to meet arguments that, based on perceived policy advantages, seek to withdraw jurisdiction otherwise conferred on this court by Congress. Thus, as a counterbalance to the notion that waivers of sovereign immunity should be narrowly construed, it is well-established that courts are "vested with a 'virtually unflagging obligation' to exercise the jurisdiction given them." *McCarthy v. Madigan*, 503 U.S. 140, 146

---

[9] In 1982, Congress amended the statute to substitute references to the new Claims Court for the old Court of Claims. *See* Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, 96 Stat. 25. Most recently, in 1992, Congress passed legislation substituting "Court of Federal Claims" for "Claims Court." Pub. L. No. 102-572, § 902(a)(1).

(1992); *see also Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."). And, the Supreme Court has followed the latter principle in refusing to rely on policy considerations either solely as the basis for limiting a court's jurisdiction or as a reason to construe an existing statutory provision beyond what its terms require.[10] "Underlying these assertions," of course, "is the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." *New Orleans Pub. Serv.*, 491 U.S. at 359; *see also Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922).

b. Second, assuming *arguendo* that policy considerations are relevant, it is hard to see how any policy underlying section 1500 is "established," given the welter of conflicting decisions in this area. In fact, the jurisprudence in this area appears to undergo a sea change every generation or so.

Some of the earliest decisions to construe section 154 of the Judicial Code, again the predecessor of section 1500, took a practical view of accomplishing that section's goal of avoiding duplicative litigation, refusing, for example, to dismiss cases in the Court of Claims as long as the plaintiff discontinued the suit pending elsewhere. *See*, *e.g.*, *Pacific Mills v. United States*, 3 F. Supp. 541 (Ct. Cl. 1933); *Peterson v. United States*, 26 Ct. Cl. 93 (1890). Later, the Court of Claims took a more parsimonious approach, holding in *British American Tobacco Co.*, 89 Ct. Cl. at 440-41, that section 154 applied even if a prior suit in the district court had been dismissed, stating "an election once having been made a dismissal on the merits of a suit in another court does not give this court jurisdiction."[11] From the late 1950s through the early 1980s, in a series of cases that included *Tecon*, *Casman v. United States*, 135 Ct. Cl. 647 (1956), and *Brown v. United States*, 358 F.2d 1002 (Ct. Cl. 1966), the court returned to what it described as a "reasonable and just construction [of the statute], not a doctrinaire or purely technical one," predicated upon the notion that "[s]ection 1500 was not intended to compel claimants to elect, at their peril, between prosecuting their claims in this court (with conceded jurisdiction, aside from Section 1500) and in another tribunal which is without jurisdiction." *Id*. at 1005. These cases balanced the policies underlying section 1500 with Congress' desire, reflected in the passage of the Tucker Act and other waiver statutes, to preserve the right of the citizenry to sue the sovereign for wrongs. During this period, the Court of Claims and eventually this court, on

---

[10] *See*, *e.g., Marshall v. Marshall*, 547 U.S. 293, 298 (2006); *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 (2002) ("we will not presume that the statute means what it neither says nor fairly implies"); *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 493-94 (1991); *New Orleans Pub. Serv. Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989); *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 829 n.7 (1986).

[11] *See* also, *e.g.*, *Los Angeles Shipbuilding & Drydock Corp. v. United States*, 152 F. Supp. 236, 238 (Ct. Cl. 1957); *Wessell, Duval & Co. v. United States*, 124 F. Supp. 636, 637-38 (Ct. Cl. 1954).

occasion, again stayed proceedings until a district court action was completed – doing so, notably, even where both actions sought monetary relief.[12] Such was the state of the law when section 1500 was reenacted in 1982.[13] In its *per curiam* decision in *Johns-Manville Corp.*, 855 F.2d at 1562-67, a five-judge panel of the Federal Circuit rejected most of these prior decisions, in holding that a prior-filed, but stayed, district court action was "pending" within the meaning of section 1500.[14] The court, however, did not expressly overrule these prior precedents, which then experienced a brief renaissance in *Boston Five Cents Sav. Bank, FSB v. United States*, 864 F.2d 137, 139-40 (Fed. Cir. 1988), in which the Federal Circuit held section 1500 inapplicable.[15] Shortly thereafter, however, in its *en banc* decision in *UNR*, the Federal Circuit explicitly overruled *Brown, Casman*, *Hossein, Boston Five Cents* and *Tecon*. Subsequent to that case, and the Supreme Court's subsequent decision in *Keene* (which rejuvenated *Tecon*), the Federal Circuit began once again to emphasize the importance of preserving access to this court, exhibited in cases such as *Loveladies Harbor*, albeit while focusing not so much on the "has pending" language of the statute, as on the "same claim" requirement therein.

   This brief survey suggests that the Federal Circuit was certainly correct when, in *UNR*, 962 F.2d at 1019, it characterized the progression of the law in this area as "erratic."[16] Over

---

   [12] *See*, *e.g.*, *Prillman v. United States*, 220 Ct. Cl. 677, 677 (1979) (suspending a Back Pay suit in this court pending resolution of a Title VII action in the district court); *see also Hossein v. United States*, 218 Ct. Cl. 727, 729 (1978).

   [13] This is noteworthy as the Supreme Court has repeatedly applied the rule of statutory construction that "a reenactment, of course, generally includes the settled judicial interpretation." *Pierce v. Underwood*, 487 U.S. 552, 567 (1988); *Lorillard v. Pons*, 434 U.S. 575, 580-81 (1978).

   [14] In his dissent, Senior Judge Nichols, who had participated in many of the earlier decisions, noted the distinction between cases emphasizing what he termed "[t]he consent to be sued and limitation on the consent to be sued," adding that "[t]he instant per curiam decision reflects the same tension between the two opposing ideas and it is reflected also in the cases it cites, some of which appear guided by the former, and some by the latter, principles." *Johns Manville*, 855 F.2d at 1568 (Nichols, S.J., dissenting).

   [15] In *Boston Five Cents*, the plaintiff filed an action in the district court seeking a declaratory judgment. After it unsuccessfully attempted to modify that complaint to include a monetary claim, it filed an action in this court. Several hours later on the same day, the plaintiff filed an identical protective suit in the district court  The Federal Circuit, applying the rationale of *Hossein*, reversed a decision of this court dismissing the complaint based upon section 1500, and ordered this court instead to stay its action pending the outcome of the declaratory judgment action. 864 F.2d at 140.

   [16] *See also* Kirgis, *supra*, at 321 (the statute "has come without the establishment of a rational and consistent jurisprudence"); Peabody, *supra*, at 102 ("the Court of Claims and the

more than a century, judicial encounters with the statute have not led to any single understanding of the policies underlying section 1500, let alone one with normative content. Nor have those cases consistently agreed as to when the general policies sometimes associated with that section must yield to countervailing policies in the dynamics of a particular case. This suggests that the policies identified in *County of Cook* can be viewed neither as dialectical imperatives nor even as dependable legal criteria for resolving the meaning of section 1500. Numerous cases, indeed, exhibit a general disdain for relying on similar considerations, particularly where questions of jurisdiction are involved. *See Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990); *Tower v. Glover*, 467 U.S. 914, 923 (1984) (refusing to limit § 1983 jurisdiction based upon public policy considerations); *Patsy v. Bd. of Regents of Fla*, 451 U.S. 496, 513 (1982) (refusing to impose exhaustion requirements on the exercise of jurisdiction based on policy considerations); *Magana-Pizano v. INS*, 200 F.3d 603, 610 (9th Cir. 1999) ("Regardless of these policy considerations, in the end the choice of jurisdictional assignment is a Congressional one.").[17]

   c. Third, assuming *arguendo* that the section ought to be construed to encourage the plaintiff to make an election and to prevent the same lawsuit from being in two courts at once, experience suggests that the rule enunciated in *County of Cook* does not prevent – and, indeed, encourages – dual simultaneous litigation against the government. To be fair, the somewhat arbitrary lines drawn by section 1500 are the primary culprit here. Relying on the "has pending" language of section 1500, the Federal Circuit, and the Court of Claims before it, have held that this court is not divested of jurisdiction when a claim that was first filed here is subsequently raised in another court. *See Hardwick Bros. Co. II*, 72 F.3d at 884; *Tecon*, 343 F.2d at 949-50; *see also Young v. United States*, 60 Fed. Cl. 418, 422-24 (2004). Those aware of these precedents and *County of Cook* avoid potential jurisdictional pitfalls by the simple expedient of filing two lawsuits – the first in this court and a second, on a later date, in the district court. For those in the know, then, "[t]he only lawyer-like remedy today . . . is double filing." *Investment Co. Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 551 F.2d 1270, 1283 (D.C. Cir. 1977) (Leventhal, J., concurring); *see also Ak-Chin Indian Cmty. v. United States*, 80 Fed. Cl. 305, 308 n.2 (2008) ("The 'has pending' language . . . simply 'forces' plaintiffs to file a complaint that

---

Federal Circuit have vacillated between a strict, textual approach to section 1500 and a quixotic search for section 1500's true meaning in the contemporary jurisdictional landscape").

  [17] *See also Patsy*, 457 U.S. at 513 (when "relevant policy considerations do not invariably point in one direction, and there is vehement disagreement over the validity of the assumptions underlying many of them[, t]he very difficulty of these policy considerations, and Congress' superior institutional competence to pursue this debate, suggest that legislative not judicial solutions are preferable"); *United States v. Gilman*, 347 U.S. 507, 511-13 (1954) ("[T]he claim now asserted, though the product of a law Congress passed, is a matter on which Congress has not taken a position. It presents questions of policy on which Congress has not spoken. The selection of that policy which is most advantageous to the whole involves a host of considerations that must be weighed and appraised. That function is more appropriately for those who write the laws, rather than for those who interpret them.").

could be perceived to be within the ambit of 28 U.S.C. § 1500 in the Court of Federal Claims before filing any related complaint in a federal district court.").[18] For such individuals, section 1500 precludes nothing in its own right, but acts only as a stoplight governing the sequential filing of two or more lawsuits. Ironically enough, then, most of the litigants who feel the sting of the "simultaneous filing" rule are those who actually elected to file a single lawsuit, that is to say, those whose conduct comports with the policies identified with that rule. Yet, their compliance arises only by ignorance of the principles currently governing the operation of section 1500.[19] (And one must wonder about any policy whose only adherents are unaware of it).

In short, it is difficult to see how the "simultaneous filing" rule consistently serves any purpose properly identified with section 1500. Again, as noted by Judge Lettow in *d'Abrera* –

> The interpretation accorded Section 1500 in *County of Cook* creates a significant trap for the unwary. In factual circumstances where jurisdiction might be split between a district court and this court, the operation of Section 1500 as interpreted in *County of Cook* could entirely bar a cause of action from being heard. First, when a complaint is filed in the district court and then suit is brought in this court on the same operative facts, this court is divested of subject matter jurisdiction and must dismiss the claim. That result is dictated by the express terms of Section 1500. Second, where only one complaint is filed in district court based upon a single set of operative facts but jurisdiction respecting one or more counts of that complaint rests with this court, the simultaneous filing rule of *County of Cook* also divests this court of subject matter jurisdiction when the district court transfers one or some of those counts to this court pursuant to Section 1631. *County of Cook*, 170 F.3d at 1091. This outcome is not derived from Section 1500 itself but rather is an artifact of the simultaneous-filing interpretation of *County of Cook*. Third, the only safe alternative for a plaintiff is to file first in this court, and thereafter to file in district court. *See Tecon Eng'rs, Inc.*, 343 F.2d at 949.

78 Fed. Cl. at 56 n.10. As this passage intimates, the policy interests that have been associated with section 1500 seem to proceed from the notion that it usually will be obvious in which court a particular claim lies. That might have been true in 1868 for the cotton claimants, but it is worlds apart from the statutory landscape that litigants must navigate today, which is marked by

---

[18] This, of course, is precisely what litigants did prior to the passage of section 1631. *See, e.g.,* S. Rep. No. 97-275, at 30 (1981); *United States v. Wickland*, 619 F.2d 75, 80 n.7 (Temp. Emer. Ct. App. 1980).

[19] It should not be overlooked that the only way that such individuals end up being viewed as having two lawsuits is by virtue of the operation of section 1631. In many instances, as is true in this case, all litigation in a district court suit has ceased by the beginning of the second suit here and it is only, via the relation back provisions of section 1631, that the two lawsuits can be artificially viewed as ever having been simultaneously pursued.

multiple waivers of sovereign immunity whose boundaries are sometimes in dispute. *Compare Bowen v. Massachusetts*, 487 U.S. 879 (1988) *with Cons. Edison of N.Y. v. U.S. Dept. of Energy*, 247 F.3d 1378 (Fed. Cir. 2001); *see also Cobell v. Kempthorne*, 2008 WL 4151330 (D.D.C. Sept. 4, 2008). The uncertainty engendered by this system can lead to what Judge Leventhal once described as games of "jurisdictional badminton," with litigants sometimes assuming the unenviable role of the shuttlecock. *See Investment Co. Inst.*, 551 F.2d at 1283 (Leventhal, J., concurring) (quoting *Natural Resources Defense Council, Inc. v. Environmental Protection Agency*, 512 F.2d 1351, 1361 (D.C. Cir. 1975) (Skelly Wright, J., dissenting in part)).

Judge Leventhal, of course, is given due credit for the passage of section 1631, which was enacted to combat this uncertainty – to prevent unfairness and injustice from attaching to a litigant's initial choice of the wrong court.[20] Yet, the "simultaneous filing rule" appears to undercut severely Congress' intent in passing this statute.[21] As noted in *d'Albrera*, "[t]he transfer provisions of Section 1631 were enacted to *cure* jurisdictional defects, but *County of Cook*

---

[20] *See, e.g.*, Jeremy Jay Butler, "Venue Transfer When a Court Lacks Personal Jurisdiction: Where are Courts Going with 28 U.S.C. § 1631?," 40 Val. U.L. Rev. 789, 822 n.174 (2006); Jeffrey W. Tayon, "The Federal Transfer Statute: 28 U.S.C. § 1631," 29 S. Tex. L. Rev. 189, 197-98 (1987); Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 16 Fed. Prac. & Proc. Juris. 2d § 3944 n.4 (2008).

[21] Section 1631 was modeled after a prior transfer statute that applied only to certain courts (including the Court of Claims). *See* 28 U.S.C. § 1406(c) (1976). It was enacted as part of the Federal Court Improvements Act of 1982, the same act that created the Federal Circuit and this court. The Senate Report explained the reason for this provision, as follows:

> In recent years much confusion has been engendered by provisions of existing law that leave unclear which of two or more federal courts including courts at both the trial and appellate level-have subject matter jurisdiction over certain categories of civil actions. The problem has been particularly acute in the area of administrative law where misfilings and dual filings have become commonplace. The uncertainty in some statutes regarding which court has review authority creates an unnecessary risk that a litigant may find himself without a remedy because of a lawyer's error or a technicality of procedure.

> At present, the litigant's main protective device, absent an adequate transfer statute, is the wasteful and costly one of filing in two or more courts at the same time. This puts increased burdens on the courts as well as on the parties.

S. Rep. No. 97-275, *supra*, at 11; *see also* Judicial Housekeeping: Hearings Before the Subcomm. on Courts, Civil Liberties and the Administration of Justice of the House of Representatives Committee on the Judiciary, 95th Cong., 2d Sess. 72-90 (1978); Tayon, *supra* at 200.

-18-

disables that cure by superimposing a policy-based interpretation of Section 1500." 78 Fed. Cl. at 56 n.10; *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) ("We should be reluctant . . . to read an earlier statute broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute."). While several Federal Circuit decisions hold that, under section 1631, a court may transfer less than all the claims before it,[22] the "simultaneous filing" rule virtually ensures that such a transfer will be met by a claim from defendant that this court lacks jurisdiction over the transferred claim under section 1500. And, as things stand, that argument often will prevail, for it is commonly the case that a district court complaint includes multiple monetary claims involving the same operative facts. The mere existence of such common claims in an original complaint is, under the "simultaneous filing" rule, enough to prevent this court from exercising jurisdiction over the transferred claim. And that is so even if the claims retained by the district court are dismissed by the court or the parties. This construction of section 1500 thus can – and, indeed, often does – lead to the dismissal of claims over which this court, but for section 1500, clearly has jurisdiction. And if, by the time this is all sorted out, the filing of a new complaint in this court is barred by the statute of limitations, the plaintiff is left without a remedy – precisely the situation, of course, that section 1631 was designed to prevent. Nevertheless, it does not appear that the court in *County of Cook* fully weighed these considerations, let alone those that underlie the citizenry's right to sue the sovereign in this court,[23] in reaching its decision.

### III.

This is not to say that the questions posed by the interaction of sections 1500 and 1631 are easy. Far from it. History shows that, where section 1500 is concerned, ***nothing*** is easy. Perhaps, though, the time has come for the Federal Circuit, if not the Congress, to revisit these

---

[22] *See, e.g., Harbuck*, 378 F.3d at 1328; *County of Cook*, 170 F.3d at 1087-89; *see also Block v. United States*, 66 Fed. Cl. 68, 72 (2005).

[23] *See United States v. Mitchell*, 463 U.S. 206, 213-14 (1983) (quoting President Lincoln's statement, in proposing the law that permitted the Court of Claims to render final judgments, that "it is 'as much the duty of Government to render prompt justice against itself, in favor of citizens, as it is to administer the same between private individuals'"; surveying purpose of Tucker Act to "'give the people of the United States what every civilized nation of the world has already done-the right to go into the courts to seek redress against the Government for their grievances'"); *United States v. Emery, Bird, Thayer Realty Co.*, 237 U.S. 28, 32 (1915) (it is an "inadmissible premise that the great act of justice embodied in the jurisdiction of the court of claims is to be construed strictly and read with an adverse eye"); *see also Block v. Neal*, 460 U.S. 289, 298 (1983) ("'The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.'") (quoting *Anderson v. Hayes Constr. Co.*, 153 N.E. 28, 29-30 (N.Y. 1926) (Cardozo, J.)); Sisk, *supra*, at 560-61.

important questions – if not in this case, then in one of the many recent cases that have dismissed otherwise viable claims on such grounds.

Based, in part, on the foregoing, the court **GRANTS** defendant's motion to dismiss. The Clerk is hereby ordered to dismiss plaintiff's complaint. Should plaintiff decide to refile her complaint here, the Clerk shall waive the filing fee. No costs.

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge
